■ VERMEER OWNERS, INC., et al., Respondents-Appellants, v GERALD GUTERMAN et al., Respondents-Appellants, and FLEUR GARAGE CORP., Appellant-Respondent, et al., Defendants. FLEUR GARAGE CORP., Appellant-Respondent, v VERMEER GARAGE CORP., Respondent-Appellant, et al., Respondents.—Order and judgment (one paper), Supreme Court, New York County (Martin Evans, J.), entered March 6, 1990, after a nonjury trial, which, *inter alia,* awarded $625,000 plus inter-

est and costs to the individual plaintiffs as class representatives for tenant shareholders similarly situated against defendants Gerald Guterman, City Partners Ltd.-SGB, and Fleur Garage Corp., jointly and severally, for common-law fraud and, in the consolidated holdover proceeding (111 AD2d 668) awarded Fleur Garage Corp. a judgment of possession for the garage premises at 77 Seventh Avenue and use and occupancy at the rate of $3,666 per month from August 1, 1984 to the date of judgment, modified, on the law and the facts, to the extent of vacating the first four decretal paragraphs, dismissing the claim of common-law fraud against the aforesaid defendants and increasing the use and occupancy award in the tenth decretal paragraph to $11,666 per month and, as so modified, the order and judgment is otherwise affirmed, without costs. Appeal from the order of the same court entered June 26, 1990 is dismissed as academic in light of the foregoing decision, without costs.

City Partners Ltd.-SGB, a limited partnership of which Gerald Guterman is the sole general partner, was the owner of a building located at 77 Seventh Avenue known as The Vermeer. On June 7, 1979, Mr. Guterman formed Vermeer Owners, Inc. for the purpose of converting the building to cooperative ownership. Prior thereto, in April 1979, he also formed Fleur Garage Corp., of which he was the sole stockholder, and caused City Partners, as landlord, to enter into a 38-year-and-five-month lease for the building's garage space with Fleur, which lease was dated "as of April 27th, 1979" and was to commence in August 1984 upon the termination of the existing 10-year lease with Vermeer Garage Corp., which provided for an annual rent of $39,000. The Fleur lease provided for an annual rent of $44,000 for the first 10 years with $5,000 increases at 10-year intervals up to a rate $59,000 from August 2014 through the end of the lease in December 2022. On August 7, 1979, Guterman sold all of Fleur's stock to Triumph Associates, a partnership controlled by Michael Schneeweiss, for which he received $5,000 in cash and a $75,000 note payable with interest on August 1, 1984. Earlier, on April 17, 1979, another Schneeweiss entity had paid him $100,000 pursuant to a consultant's agreement.

Plaintiffs' claims are based upon the statements in the November 27, 1979 offering plan that neither the sponsor nor its principals had any financial or other interest in Fleur; that the sponsor entered into the Fleur lease because of its belief that it was in its best financial interest to do so; and, that the Fleur lease was a valid and binding agreement regardless of

whether or not The Vermeer was converted to cooperative ownership. It is undisputed that all of the financial terms and the length of the lease were fully disclosed.

The trial court found that the first statement was false, since the lease, which was Fleur's sole asset, was assigned to Guterman in the August 7th stock purchase as security for payment of the $75,000 note which he had taken as part payment for the stock, and that in substance, the three statements, taken together, appear to have been designed to, and did, lead reasonable persons to conclude that the lease had been entered into in an arm's length transaction and that the lease represented the best terms that could have been obtained. This, the court found, was far from the truth since the rent payable under the lease was less than the fair market rental value otherwise obtainable through an arm's length transaction, which it found to be $650,000.

The court dismissed plaintiffs' claims under the antifraud provisions of the Martin Act (General Business Law § 352-c), recognizing that there is no private cause of action implied by the statute (*CPC Intl. v McKesson Corp.,* 70 NY2d 268), but found in favor of plaintiffs on their cause of action for common-law fraud, *sua sponte* determining that their action was to be maintained as a class action nunc pro tunc and that their recovery was as representatives of the class comprised of those tenant-shareholders of The Vermeer who purchased their shares of stock in reliance on the offering plan.

In so ruling, the trial court held that Guterman's misrepresentations clearly violated the fiduciary duty which he owed The Vermeer tenants and provided it with a basis for awarding plaintiffs equitable relief. Such affirmative misrepresentations, it found, distinguished this case from *East End Owners Corp. v Roc-East End Assocs.* (128 AD2d 366), where there were no affirmative misrepresentations.

However, regardless of whether or not the misrepresentations may be characterized as sins of commission rather than omission, the missing element in this action for common-law fraud is any evidence of reliance by the plaintiffs on such misrepresentations to their detriment. In fact, the only one of the named plaintiffs to testify stated, in substance, that he had not relied upon the misrepresentations and had bought his apartment in 1981 only to avoid eviction. (One other tenant-purchaser, not a named plaintiff, testified that she would have joined the opposition to the conversion had she known the true facts pertaining to the garage lease.)

As in *East End Owners (supra)*, which also involved a so-called "sweetheart" garage lease, entered into before the tenant shareholders could act, and an undisclosed, ongoing business relationship between the sponsor's principals and the lessee, plaintiffs' alleged injury resulted from the loss of rental income to the cooperative and the concomitant increase in maintenance charges to the shareholders. In dismissing the claim for common-law fraud, this court held, in language equally applicable here: "Their injury, if any, does not arise from the fact that principals of the sponsor-lessor had an ongoing relationship with the lessee, but from the discount, below market, rate which may have been given the lessee for the term of this renewable lease. Such loss, however, is readily discernible from analysis of the financial terms of the lease which were fully disclosed in the offering plan. Where a party has means available to him for discovering, 'by the exercise of ordinary intelligence', the true nature of a transaction he is about to enter into, 'he must make use of those means, or he will not be heard to complain that he was induced to enter into the transaction by misrepresentations' *(Schumaker v Mather,* 133 NY 590, 596 [1892]). Respondents had, in the offering statement, the means for discovering whether the rental to be paid under this lease was reasonably related to current market rates or not." *(East End Owners Corp. v Roc-East End Assocs.,* 128 AD2d, *supra,* at 370-371.)

While, in light of our dismissal of plaintiffs' common-law fraud claim, the question is academic, the trial court's *sua sponte* grant of class action certification nunc pro tunc after trial was clearly error. Plaintiffs never moved for class action certification presumably because, in this complex fraud action, such motion was unlikely to be granted due to the lack of predominance of common issues of law or fact, including, for example, the obvious differences in individual perceptions regarding the desirability of the insider's price, the future direction of the real estate market and one's personal financial situation (CPLR 901 [a] [2]). Indeed, as previously noted, the only plaintiff to testify stated that he thought that the garage lease was in the sponsor's interest and unfair to any cooperative corporation and did not rely upon the misrepresentations, but only purchased in 1981 to avoid being evicted regardless of the terms of the garage lease. Such testimony would actually disqualify such plaintiff as a class representative on grounds of atypicality *(see, Ross v Amrep Corp.,* 57 AD2d 99, 102).

In determining the summary holdover proceeding, the trial

court properly denied rescission based upon the sponsor's alleged breach of its fiduciary duty to prospective purchasers. It had no such fiduciary obligation at the time it entered into the Fleur lease and any self-dealing by the sponsor prior to the public offering was proper *(Northridge Coop. Section No. 1 v 32nd Ave. Constr. Corp.,* 2 NY2d 514, 526). The sponsor's obligation was to disclose all material terms of the transaction to the purchasing public *(see, People v Lexington Sixty-First Assocs.,* 38 NY2d 588, 595).

The court also clearly recognized the below market nature of the Fleur lease. Nevertheless, in assessing use and occupancy against Vermeer Garage Corp., which held over and retained occupancy of the garage premises for 5½ years after the expiration of its lease, it erroneously used the $3,666 per month rental figure derived from the Fleur lease. Reasonable use and occupancy was clearly shown to be $140,000 per year, based upon the interim lease entered into between the holdover tenant and the cooperative corporation, and we modify such award accordingly. Concur—Kupferman, J. P., Asch, Smith and Rubin, JJ. *[See,* 171 AD2d 467.]