[679 NYS2d 593]

PHYLLIS SMALL et al., Individually and on Behalf of All Others Similarly Situated, Respondents, v LORILLARD TOBACCO COMPANY, INC., et al., Appellants, et al., Defendants.

CATHERINE ZITO et al., Individually and on Behalf of All Others Similarly Situated, Respondents, v AMERICAN TOBACCO COMPANY, INC., et al., Appellants, et al., Defendants.

SHARLENE HOBERMAN et al., Individually and on Behalf of All Others Similarly Situated, Respondents, v BROWN & WILLIAMSON TOBACCO CORPORATION et al., Appellants, et al., Defendants.

ROSE FROSINA et al., Individually and on Behalf of All Others Similarly Situated, Respondents, v PHILIP MORRIS, INC., et al., Appellants, et al., Defendants.

MARY A. HOSKINS, as Executrix of EDWIN P. HOSKINS, Deceased, Individually and on Behalf of All Others Similarly Situated, Respondent, v R.J. REYNOLDS TOBACCO COMPANY et al., Appellants, et al., Defendants.

First Department, October 27, 1998

2

## APPEARANCES OF COUNSEL

*Martis Ann Brachtl* and *Louis Gottlieb* of counsel (*Jonathan M. Plasse, Brian S. Campf, Hollis L. Salzman, Lisa Wayne Weiss, Peter W. Brueggen, Sameer Rastogi* and *Stephen B. Murray, Jr.,* on the brief; *Goodkind Labaton Rudoff & Sucharow,*

*L. L. P.,* and *Steven Murray Law Firm,* attorneys), for respondents.

*Gary R. Long* of counsel (*Alan Mansfield, Robert J. Kirshenberg* and *John K. Sherk, III,* on the brief; *Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel; Dechert Price & Rhoads,* and *Shook Hardy & Bacon, L. L. P.,* attorneys), for Lorillard Tobacco Company and another, appellants.

*Harry Zirlin* of counsel (*Bruce G. Merritt* and *R. Townsend Davis, Jr.,* on the brief; *Debevoise & Plimpton,* attorneys), for Council for Tobacco Research-U.S.A., appellant.

*Allison Scher* of counsel (*Anthony R. Mansfield* and *Jack Yoskowitz* on the brief; *Seward & Kissel,* attorneys), for The Tobacco Institute, appellant.

*Daniel J. O'Neill* of counsel (*Thomas E. Riley, Gretchen Werwaiss* and *David M. Stark* on the brief; *Chadbourne & Parke, L. L. P.,* and *King & Spalding,* attorneys), for Brown & Williamson Tobacco Corporation, as successor by merger to The American Tobacco Company, appellant.

*Roy L. Reardon* of counsel (*John J. Kenney* and *Joseph M. McLaughlin* on the brief; *Simpson Thacher & Bartlett,* attorneys), for B.A.T. Industries, P. L. C., appellant.

*Hugh R. Whiting* of counsel (*Mark A. Belasic, Elizabeth A. Grove, Robert W. Gaffey, Harold K. Gordon* and *Kimberly C. Roosevelt* on the brief; *Jones, Day, Reavis & Pogue,* attorneys), for R.J. Reynolds Tobacco Company, appellant.

### OPINION OF THE COURT

ROSENBERGER, J. P.

These consolidated appeals arise out of five related class actions brought by cigarette consumers against the leading cigarette manufacturers, their parent organizations, the Council for Tobacco Research (CTR) and the Tobacco Institute (TI). The latter two defendants are research and lobbying organizations created by the tobacco companies.

In one of the orders appealed from, plaintiffs moved to certify two proposed classes: a damages class composed of all New York State residents who became nicotine dependent on or after June 19, 1980, and an injunction class of smokers who purchased defendants' cigarettes in New York State. For each of the five class actions, the IAS Court certified a class defined as persons who purchased and smoked defendants' cigarettes, in order to eliminate the need for proof of each class member's addiction. So defined, the plaintiff class for each of the five

lawsuits would exceed one million people. In the other order, the court denied the defendants' motions to dismiss the action for failure to state a cause of action, lack of subject matter jurisdiction and lack of personal jurisdiction over Brown & Williamson's corporate parents. Both orders should be reversed.

Plaintiffs do not seek damages for ill health caused by smoking. Rather, they cast this action as a consumer fraud case and seek only recovery of the money they spent on cigarettes since 1980, as well as an injunction preventing defendants from making further misrepresentations about nicotine and ordering them to notify the class members about the drug's true effect on smokers.

Plaintiffs claim that they were deceived into becoming smokers because defendants lied about nicotine's addictive properties while secretly manipulating the nicotine content of their products in order to addict consumers. They allege common-law fraud, violations of General Business Law §§ 349 and 350 (deceptive business practices) and civil conspiracy.

The extent of the defendants' allegedly deceptive practices was first revealed to the public in the spring of 1994 during the Congressional investigation into the tobacco industry. This investigation uncovered cigarette manufacturers' internal memoranda and studies, going back as far as the 1950's, which appeared to show that the manufacturers extensively researched nicotine addiction with the express intention of designing products so addictive that people would be unable to stop buying them. Meanwhile, the manufacturers' public statements consistently denied that nicotine was addictive.

Among these manufacturers were defendants Philip Morris, Brown & Williamson, R.J. Reynolds, American Tobacco Company and Lorillard. Plaintiffs claim that CTR and TI were also aware of, or actively generating, such research, even as they attempted, at the manufacturers' behest, to convince the public that their objective scientific studies cast doubt on the purported adverse consequences of smoking.

Defendants contend, first, that class certification is inappropriate because individual questions of fact predominate, particularly as to reliance and damages; and second, that in whatever form this action is brought, plaintiffs' claims fail to establish the elements of fraud and deceptive business practices, and are preempted by the Federal Cigarette Labeling and Advertising Act, as interpreted by the Supreme Court in *Cipollone v Liggett Group* (505 US 504). We share plaintiffs' concern that unethical business dealings should not go

unpunished simply because defendants harmed so many people that judicial resolution of their claims would be unmanageable. Nevertheless, as to those particular actions, the law is on defendants' side.

CLASS CERTIFICATION

CPLR 901 (a) provides that the court has discretion to grant class certification only if:

"(1) the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"(2) there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"(4) the representative parties will fairly and adequately protect the interests of the class; and

"(5) a class action is superior to other available methods for fair and efficient adjudication of the controversy."

While the plaintiffs bear the burden of showing that certification is appropriate, the statute should be broadly construed, especially where the denial of certification " 'would effectively terminate further litigation' " (*Brandon v Chefetz*, 106 AD2d 162, 169 [citation omitted]).

Defendants do not dispute the IAS Court's finding of numerousness, for the obvious reason that each of the five classes would contain at least a million members.

The heart of defendants' argument is that individual issues predominate. First, even though they seek compensation only for economic losses as consumers, not personal injury damages, plaintiffs have not eliminated the very individualized issue of whether each was nicotine dependent. Second, it cannot be presumed that each class member even knew of the alleged misrepresentations, let alone relied on them.

The IAS Court distinguished *Castano v American Tobacco Co.* (84 F3d 734 [5th Cir]), in which the Fifth Circuit decertified a class of allegedly nicotine-dependent persons because proof of actual addiction would involve too many subjective and individualized factors. Unlike *Castano*, the IAS Court reasoned, proof of addiction was not an issue here because plaintiffs' theory of liability was based on the fraudulent nature of the transaction, not its health effects. The court accordingly redefined the class as all persons who purchased and smoked defendants' cigarettes.

Yet, this strategic redefinition superficially strengthened one aspect of plaintiffs' case only by fatally weakening another aspect. If plaintiffs do not prove addiction, they cannot show that they were harmed by defendants' deceptive exploitation of the addictive properties of nicotine to maintain their customer base.

Proof of injury is essential to plaintiffs' General Business Law claims. While General Business Law § 349 "does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm" (*Oswego Laborers' Local 214 Pension Fund v Marine Midland Bank*, 85 NY2d 20, 26). Section 349 (h), which was added to the original statute to give private parties a right of action, grants that right only to "any person who has been injured" by deceptive business practices. Neither the case law nor the statutory language supports plaintiffs' argument that the deception *is* the injury.

Various courts around the Nation have denied class certification in tobacco lawsuits similar to this case because individual issues of fact as to addiction and personal injury predominated (*e.g.*, *Lyons v American Tobacco Co.*, 1997 US Dist LEXIS 18365 [SD Ala]; *Barnes v American Tobacco Co.*, 984 F Supp 842 [ED Pa]; *Arch v American Tobacco Co.*, 175 FRD 469 [ED Pa]; *Walker v Liggett Group*, 175 FRD 226 [SD W Va]).

In the one tobacco case where such a class was certified (*R.J. Reynolds Tobacco Co. v Engle*, 672 So 2d 39 [Fla Dist Ct App] [certifying class of Florida residents who suffered medical conditions caused by nicotine addiction]), the court rejected a nationwide class of one million members as totally unmanageable because of the need for individualized consideration of reliance and damages and certified a much smaller class. There was no analysis of why the common issues predominated over the individual issues. Further, the action was ultimately dismissed as preempted by the Federal Cigarette Labeling and Advertising Act (*Engle v R.J. Reynolds Co.*, Fla Cir Ct, Mar. 28, 1997, Solomon, J.). *Broin v Philip Morris Cos.* (641 So 2d 888 [Fla Dist Ct App]), also relied on by plaintiffs, is simply inapplicable because all of the approximately 60,000 class members were passive, involuntary inhalers of secondhand smoke, and, thus, reliance was not a factor.

*Lyons* (*supra*) is more analogous to the facts at hand. In that case, as here, plaintiffs (former members of the decertified *Castano* class) unsuccessfully sought to hold the major tobacco

manufacturers liable for fraud and negligent misrepresentation, based on the latter's manipulation of nicotine levels and denial of nicotine's addictive nature.

As the IAS Court acknowledged in the instant case, "a claim which turns on proof of actual addiction would involve far too many subjective factors and present many of the same manageability concerns cited in *Castano (supra)* to warrant class action treatment." (175 Misc 2d 294, 300.) It makes no difference that nicotine addiction itself was the injury claimed by the *Lyons* plaintiffs, while the present plaintiffs claim economic injuries resulting from addiction-induced purchases. No matter how the class and its theories of liability are redefined, plaintiffs' General Business Law claims do indeed turn on proof of addiction. Their only grounds for seeking recovery of the money they spent on cigarettes would be that defendants' deception prevented plaintiffs from making free and informed choices as consumers. Otherwise, plaintiffs' subsequent regret about their purchasing decisions, while understandable, is simply not actionable.

Just as individualized proof of addiction is essential to the General Business Law § 349 cause of action, individualized proof of reliance is essential to the causes of action for false advertising under General Business Law § 350 and for common-law fraud, a circumstance that further supports denial of certification. Generally, class actions premised on fraud require proof of reliance by each class member (*Vermeer Owners v Guterman*, 169 AD2d 442, 444, *affd* 78 NY2d 1114).

Reliance on defendants' misrepresentations will not be presumed where plaintiffs had a reasonable opportunity to discover the facts about the transaction beforehand by using ordinary intelligence (*supra,* at 445), or where a variety of factors could have influenced a class member's decision to purchase (*Katz v NVF Co.*, 100 AD2d 470, 473). Only when defendants effectively controlled all the information about the transaction will the existence of misrepresentations give rise to an inference of reliance without need for further proof (*King v Club Med*, 76 AD2d 123, 127, *appeal withdrawn* 57 NY2d 777 [vacation brochure fraudulently stated that hotel had plumbing and electricity]; *Stellema v Vantage Press*, 109 AD2d 423, 424 [before author signed contract, publisher misrepresented nature and extent of services it would perform]).

In *King* and *Stellema*, the misrepresentation was made in a limited uniform document actually received by each plaintiff, under circumstances giving rise to the legitimate inference

that they considered it when making their decision. Here, by contrast, plaintiffs do not point to any specific advertisement or public pronouncement by the tobacco companies, or any statement by CTR or TI, which was undoubtedly seen by all class members. "The complaint does not show any one misrepresentation, or group of misrepresentations, or common thread that may be applicable to substantially the entire group" (*Ross v Amrep Corp.*, 57 AD2d 99, 103, *appeal dismissed* 42 NY2d 910 [denying certification because individual issues predominated]). Instead, plaintiffs base their claims on defendants' general strategy of trying to hide the fact that nicotine was addictive, a fact which plaintiffs claim was previously unknown to them before the 1994 Congressional hearings.

Plaintiffs' claim of ignorance is implausible in light of years of pre-1994 press coverage of research on nicotine addiction, as well as the well-known difficulty of quitting smoking. Over the past two decades, the major New York newspapers have published literally hundreds of articles about nicotine addiction and reported numerous public statements by the Government and the public health industry to the effect that cigarettes contain a highly addictive drug (*see, e.g., Philip Morris Is Criticized*, New York Times, Apr. 8, 1991, at D4 [American Heart Association, American Lung Association and American Cancer Society say nicotine is addictive]; Diesenhouse, *Many Smokers Hope to Quit, But Few Get Proper Help*, NY Times, July 20, 1989, at B6 [Centers for Disease Control says nicotine is addictive]; Tolchin, *Surgeon General Asserts Smoking Is an Addiction*, New York Times, May 17, 1985, at A1; *U.S. Calls Smoking Addictive*, New York Times, Mar. 7, 1983, at B9 [Government pamphlet calls nicotine addictive]).

Long before 1994, the tobacco companies' position on addiction was discredited by public health experts (*e.g., Cigarette Manufacturers Dispute Government Claim That Smoking Is Addictive*, Associated Press, Mar. 8, 1983, P.M. cycle). The objectivity of CTR and TI has been severely questioned (*e.g.,* Colen, *Tobacco Institute Blowing Smoke At Teens*, Newsday, Mar. 31, 1992, at 57 [criticizing TI pamphlet aimed at teens for not mentioning that nicotine is more addictive than heroin]).

As far back as 1969, the press publicized Congress's suspicions that cigarette manufacturers were adjusting nicotine levels to ensure that customers would be unable to quit (New York Times Information Back Abstracts, May 8, 1969, at 31). One tobacco company executive even admitted this in Business Week (*It's Turmoil for Cigarette Admen*, Business Week, Dec.

13, 1969, at 84). Thus, this particular practice, while duplicitous, was not kept carefully hidden from the public before 1994. At the least, this widely available information about nicotine forecloses any presumption of reliance and requires individualized inquiry into whether particular class members were unaware of such information.

In fact, plaintiffs have conceded that individual issues of causation and reliance must be dealt with at some point during the proposed trial. However, they succeeded in convincing the IAS Court that this investigation could be postponed to a later phase of the trial, after liability has been established on the common issues (basically, defendants' alleged conspiracy to deceive the public). The Fifth Circuit rejected such bifurcation in *Castano*, stating that a trial court "cannot manufacture predominance" by "[s]evering the defendants' conduct from reliance" (*Castano v American Tobacco Co.*, supra, 84 F3d, at 745, n 21).

Like the District Court in *Castano*, the IAS Court wrongly "assumed that because the common issues [of defendants' coordinated scheme to manipulate nicotine content and misrepresent its effects] would play a part in every trial, they must be significant" (*supra,* at 745). Such a relaxation of the predominance requirement would effectively nullify it: if *any* element of fraud were common to all the individual trials, CPLR 901 (a) (2) would be deemed satisfied no matter how much individualized proof was needed for the other elements.

The named plaintiffs' claims are also not typical of the claims of the putative class members, now that the class is no longer defined by addiction. At their depositions, plaintiffs took the position that they were addicted to nicotine and therefore lacked the free will to quit smoking. These plaintiffs are not similarly situated to a putative class of people who allegedly would never have begun smoking, or would have ceased immediately, if they had been told that cigarettes were addictive.

In an action based on alleged misrepresentations, a named plaintiff's claims are atypical if he or she did not rely on, or even see, these misrepresentations (*Vermeer Owners v Guterman, supra,* 169 AD2d, at 445). Here, the representatives' own claims fail to establish the reliance and causation elements. Some, such as Phyllis Small and Anilda Ross, admitted that they noticed the warnings on the cigarette packages and in the press about serious health risks from smoking, but ignored them.

Named plaintiffs Sharlene Hoberman and Catherine Zito, among others, testified that they could not recall relying on

any particular statements by the tobacco companies or their lobbying organizations. Denise Fubini testified at her deposition that she had long been aware of claims by the Government and scientists that cigarettes were addictive, but said she was confused by the tobacco industry's general position to the contrary (though she could not remember any specific statements). The late Edwin Hoskins similarly testified that he read newspapers and magazines regularly but ignored the pervasive warnings about the risks of smoking. Small and Ross testified that they never saw or heard any statements by the companies they are suing.

The manner in which the named plaintiffs limited their claims makes them inadequate to represent a putative class of all persons who purchased and smoked cigarettes in New York. In an attempt to eliminate the need for individualized proof of addiction and injury, such as was found unmanageable in *Castano (supra)*, plaintiffs only seek recovery of the purchase price of cigarettes. Moreover, they limit their claims to losses incurred after 1980, even though defendants have allegedly been defrauding the public since the 1950's, for no other apparent reason than to make this a "negative value" suit where each member's damages are so small that only a class action would be worth the expense of litigation.

Under New York's transactional approach to res judicata, once a claim is brought to final conclusion, all other claims arising out of the same transactions are barred, even if based on a different theory or seeking a different remedy (*O'Brien v City of Syracuse*, 54 NY2d 353, 357). Should these plaintiffs prevail, they will preclude all New York smokers' chances of bringing potentially more lucrative damages claims for personal injury and emotional distress from nicotine addiction. Defendants are also put at risk of uncertainty as to whether this action has finally disposed of the claims of all class members, since a later court might find that some or all members were not adequately represented. The ability to opt out of the class is insufficient to protect the rights of putative class members who would want to seek remedies other than those chosen by the representatives (*Ross v Amrep Corp.*, *supra*, 57 AD2d, at 103).

We find persuasive the reasoning of the Southern District Court of New York in *Feinstein v Firestone Tire & Rubber Co.* (535 F Supp 595, 606-607 [SD NY]). In *Feinstein*, the named plaintiffs sued only for economic losses from allegedly defective tires and argued that class members could pursue their

personal injury claims individually in other courts. The court disagreed, finding that representatives who "tailored the class claims in an effort to improve the possibility of demonstrating commonality" obtained this "essentially cosmetic" benefit only by "presenting putative class members with significant risks of being told later that they had impermissibly split a single cause of action" (*supra,* at 606). For this reason, they were inadequate representatives.

As discussed above, this proposed class action would be unmanageable because of the individual issues of reliance, causation and damages with respect to each of the five million plaintiffs. Defendants have a due process right to cross-examine each member, a task that would take hundreds of years. Even if the trial were bifurcated as plaintiffs propose, at some point it would have to be split into millions of individual trials. If the named plaintiffs' depositions are any indication, many of these class members might have no valid claims, either because they did not see any statements by defendants or because they ignored other widespread information about the addictive nature of cigarettes. By contrast, it would be more efficient if persons whose personal injury and fraud claims had individual merit brought individual actions against defendants.

### FEDERAL PREEMPTION AND LACK OF JURISDICTION

■ Defendants made separate motions to dismiss the amended complaints on the grounds of failure to state a cause of action, failure to plead fraud and deceit with particularity and lack of subject matter jurisdiction due to Federal preemption. B.A.T. moved to dismiss as against it on the additional ground of lack of personal jurisdiction. The IAS Court consolidated these motions for purposes of disposition and denied them. We reverse this order and dismiss the action.

The Cigarette Labeling and Advertising Act ([the Act] 15 USC § 1331 *et seq.*) established a comprehensive scheme of Federal regulation of cigarette advertising and labeling with respect to the health effects of smoking. The Act is designed to ensure that consumers nationwide receive adequate, clear, uniform information about the dangers of smoking. In the interest of such uniformity, the Act contains an express preemption clause at section 1334:

"(a) Additional Statements

"No statement relating to smoking and health, other than the statement required by section [1333 of this title], shall be required on any cigarette package.

"(b) State regulations

"No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act."

Matters outside the scope of an express preemption provision in a statute are not preempted (*Cipollone v Liggett Group*, 505 US 504, 517, *supra*). Thus, an action based on State law can be maintained only if the legal duty that defendants allegedly breached should not be considered a "requirement or prohibition based on smoking and health * * * imposed under State law with respect to the advertising or promotion" of cigarettes (15 USC § 1334 [b]).

The majority of plaintiffs' claims are foreclosed by the Supreme Court's interpretation of section 1334. In *Cipollone*, the petitioner, whose mother had died of lung cancer after smoking for 42 years, sued three of the major cigarette companies whose products she had used. He sought to hold them liable "because they breached express warranties contained in their advertising, because they failed to warn consumers about the hazards of smoking, because they fraudulently misrepresented those hazards to consumers, and because they conspired to deprive the public of medical and scientific information about smoking" (*Cipollone v Liggett Group*, *supra*, at 508). Thus, like the plaintiffs herein, the petitioner in *Cipollone* asserted failure to warn, misrepresentation and conspiracy claims.

Cipollone's failure to warn claims were deemed preempted to the extent that they asserted that respondents should have made particular representations in their advertisements or their public statements about smoking, other than the warning labels on packages and print advertisements mandated by the Act (*supra*, at 524). However, "[t]he Act does not * * * preempt * * * claims that rely solely on [respondents'] testing or research practices or other actions unrelated to advertising or promotion" (*supra*, at 525).

Similarly, the Act preempted Cipollone's fraudulent misrepresentation claim premised on the argument that respondents' positive portrayals of smoking neutralized the effect of warnings about the hazards of smoking. The essence of this claim was that respondents had breached a duty with respect to health information in their advertising and promotions, a topic expressly preempted by section 1334 (*supra*, at 527).

However, Cipollone asserted another fraudulent misrepresentation claim that was not so obviously preempted. The the-

ory was that respondents had breached a State law duty not to make false statements of material fact or conceal material facts from consumers. The Supreme Court concluded that the Act was not meant to preempt all State law false advertising claims. "Such claims are predicated not on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive" (*supra,* at 528-529). While the Act's preemption of State regulation of labels and warnings made sense as a policy matter because of the need for uniform standards in packaging and promoting nationally advertised products, this rationale did not apply to common-law fraud claims, which "rely only on a single, uniform standard: falsity" (*supra,* at 529).

This expansive language would seem to preserve the present plaintiffs' claims based on defendants' concealment, denial and secret exploitation of nicotine's addictive properties. However, other statements in the Court's holding on this issue must be read to bar some of these claims: "Petitioner's claims that respondents concealed material facts are therefore not preempted insofar as those claims rely on a state-law duty to disclose such facts *through channels of communication other than advertising or promotion.* Thus, for example, if state law obliged respondents to disclose material facts about smoking and health to an administrative agency, [§ 1334 (b)] would not preempt a state-law claim based on a failure to fulfill that obligation" (*supra,* at 528 [emphasis added]). *Lacey v Lorillard Tobacco Co.* (956 F Supp 956, 962-963 [ND Ala]) persuasively clarified which common-law fraud claims are not preempted after *Cipollone*: (1) breach of express warranty; (2) fraud by intentional misstatement of material facts; (3) claims based exclusively on acts unrelated to advertising or promotion, such as testing or research practices; (4) violation of a State law duty to disclose information by means other than advertising or promotion, such as mandated disclosures to a government agency.

Many Federal and State courts agree that the Act preempts all claims by consumers that the tobacco companies failed to disclose information to the public beyond what was required by Federal law (*e.g., Griesenbeck v American Tobacco Co.,* 897 F Supp 815, 825 [D NJ]; *Allgood v R.J. Reynolds Tobacco Co.,* 80 F3d 168, 171 [5th Cir], *cert denied* 519 US 930). "[A] claim that defendants have a duty to disclose additional information concerning cigarette ingredients unavoidably attacks defendants' advertising and promotion" (*Lacey v Loril-*

*lard Tobacco Co., supra,* 956 F Supp, at 962). "Because manufacturers [of cigarettes] can ordinarily communicate directly with consumers * * * only through 'advertising or promotion' channels of communication, we must conclude that [plaintiff's] fraudulent suppression claims, as pleaded, are inevitably based upon a 'state law duty to disclose * * * facts through * * * advertising or promotion' channels of communication and, therefore, that they [are] preempted" (*Cantley v Lorillard Tobacco Co.*, 681 So 2d 1057, 1061 [Ala] [citations omitted]).

In light of the foregoing, plaintiffs' claims are preempted insofar as they allege fraudulent concealment and failure to warn of the dangers of nicotine, but not insofar as they allege affirmative misrepresentations on which plaintiffs relied to their detriment.

Those claims that are not preempted are nonetheless to be dismissed because plaintiffs' allegations of misrepresentation lack the requisite specificity. To make out a prima facie case of fraud, the pleadings must contain detailed allegations in support of every element: representation of material fact, falsity, scienter, reasonable reliance and damages (*Megaris Furs v Gimbel Bros.*, 172 AD2d 209). Similarly, a claim for deceptive business practices under General Business Law § 349 or for false advertising under General Business Law § 350 requires proof of a causal connection between some injury to plaintiffs and some misrepresentation made by defendants (*Gershon v Hertz Corp.*, 215 AD2d 202, 203 ["Plaintiff's cause of action under General Business Law § 350 for false advertising is legally insufficient absent an allegation that he relied upon or even knew of defendant's advertising"]).

However, the plaintiffs' complaint does not furnish sufficient examples of misrepresentations on which plaintiffs relied. The complaint specifically identifies only two pre-1994 statements: a 1954 newspaper advertisement titled "A Frank Statement," which described the predecessor to CTR as an objective research committee; and a 1987 pronouncement by an unnamed TI spokesman that it was meaningless to speak of cigarettes as addictive. Neither of these is sufficient to support a prima facie case that defendants defrauded plaintiffs by means of affirmative misrepresentations about the addictive properties of nicotine in their cigarettes.

However, the complaint presents no additional facts to support an inference that plaintiffs saw the "Frank Statement" advertisement and relied on it. The fact that the named

plaintiffs "read news periodicals during the time period the alleged misrepresentations were made * * * falls far short of proving [they] actually relied upon them" (*Allgood v R.J. Reynolds Tobacco Co., supra*, 80 F3d, at 171), especially in light of their testimony "that [they were] so addicted that no amount of warning could induce [them] to quit" (*supra,* at 172).

Further, even assuming that the "Frank Statement" had led them to believe in the objectivity of CTR, plaintiffs have not alleged how they were damaged by holding this belief, because their complaint does not refer to any specific statement by CTR about addiction (or anything else). Rather, they allege that CTR fraudulently concealed research results. Any common-law fraud claim premised on this theory is preempted by the Act; even though the Act would not preempt claims based on fraudulent concealment occurring before its effective date of 1969, plaintiffs herein have deliberately limited their case to post-1980 injuries. Since the private right of action under General Business Law § 349 was created in 1980 (General Business Law § 349 [h]), claims under this statute cannot depend solely on a 1954 advertisement.

As for the 1987 TI statement, there is no indication where it was published or broadcast, and thus no way of knowing how likely it is that the plaintiffs relied on it. In any event, plaintiffs can hardly hope to show that a statement made in 1987 induced them to begin smoking in 1980, the date from which they seek damages.

The only other misrepresentations identified by plaintiffs are the testimony of the CEOs of the five defendant tobacco companies before Congress in March 1994 that they did not believe nicotine was addictive and an editorial published by defendants in various newspapers a few days after said testimony. These statements should not even be considered because the complaint concedes that plaintiffs were only defrauded until March or April 1994, at which time the public became aware of the discrepancy between the aforementioned CEOs' statements and the internal documents disclosed by the Congressional investigation.

Contrary to the reasoning of the IAS Court, this is not a situation where the requirement of pleading with particularity should be excused because the facts constituting the fraud "are peculiarly within the knowledge of the party moving for summary relief" (*P.S. Auctions v Exchange Mut. Ins. Co.*, 105 AD2d 473, 475 [defendant insurer alone knew whether its adjuster deliberately understated amount of property damage in order

to deprive plaintiff of full coverage]). This argument only makes sense where the alleged wrongdoing is fraudulent concealment. Plaintiffs cannot simultaneously assert that they were deceived by affirmative misrepresentations and that the identity of such misrepresentations is unknowable. Thus, plaintiffs' remaining claims are dismissed in their entirety.

Defendant B.A.T. Industries is a British holding company that owns Batus Holding, Inc., a Delaware corporation, which in turn holds the shares of the tobacco company Brown & Williamson. Plaintiffs claimed that New York had personal jurisdiction over B.A.T., predicated on a conspiracy theory. CPLR 302 (a) (2) confers long-arm jurisdiction over a nondomiciliary who commits a tort in New York State through an agent. For purposes of this statute, a coconspirator can be an agent (*Reeves v Phillips*, 54 AD2d 854, 855). Finding that the issue of jurisdiction was inextricably intermingled with the merits of the case, i.e., whether there was a conspiracy to deceive cigarette consumers, the IAS Court properly denied B.A.T.'s motion to dismiss, without prejudice to assert the jurisdiction defense in the B.A.T. defendants' answers (*see, Reeves v Phillips, supra*, at 855).

To survive a motion to dismiss, plaintiffs needed to make out a prima facie case of conspiracy and allege sufficient facts warranting the inference that B.A.T. was a member thereof (*Allstate Life Ins. Co. v Linter Group*, 782 F Supp 215, 222 [SD NY]). Plaintiffs' allegations, supported by documentary evidence, made out a prima facie case that B.A.T. established coordinated research, marketing, public relations, tobacco growing and cigarette design policies for all its subsidiary tobacco companies, including Brown & Williamson. The documents created an issue of fact as to whether B.A.T. directed its tobacco subsidiaries to use particularly addictive additives and to conceal scientific research on addiction. If plaintiffs are correct, B.A.T.'s actions could have had a significant impact on the way Brown & Williamson's cigarettes were sold in New York, sufficient for a finding that there was a "substantial connection between the [alleged] conspiracy and the forum state" (*Vermont Castings v Evans Prods. Co.*, 510 F Supp 940, 944 [D Vt]).

B.A.T. cites three recent decisions that have granted B.A.T.'s motion to dismiss for lack of personal jurisdiction in actions similar to this one. However, these cases do not dictate a different result here. In *State v American Tobacco Co.* (707 So 2d 851, 856 [Fla Dist Ct App]), jurisdiction could not be based on

conspiracy "because there was no count for conspiracy alleged against [any of the appellees] * * * and all of the counts which might have involved a conspiracy, if any, were settled as to all parties". In *City & County of San Francisco v Philip Morris, Inc.* (1998 US Dist LEXIS 3071 [ND Cal]), the action was dismissed as to B.A.T. because California, unlike New York, does not recognize conspiracy as a basis for long-arm jurisdiction. Finally, B.A.T. points to *Laborers Local 17 Health & Benefit Fund v Philip Morris, Inc.* (26 F Supp 2d 593 [SD NY]), where the court considered the conspiracy theory at length and rejected it because those plaintiffs had not alleged sufficient facts. However, even then, although B.A.T.'s motion to dismiss was temporarily granted, plaintiffs were also granted leave to amend the complaint in order to plead additional facts that could support a finding of long-arm jurisdiction under CPLR 302 (a) (2) based on conspiracy.

Since we are dismissing the entire action, B.A.T.'s appeal from this ruling is academic. Were this not so, we would uphold the IAS Court's determination on this point.

Accordingly, the orders, Supreme Court, New York County (Charles Ramos, J.), entered on or about October 28, 1997 and October 31, 1997, respectively, one of which granted plaintiffs' motions for class certification, and the other of which denied defendants' motions to dismiss, should be reversed, on the law, without costs, plaintiffs' motions should be denied, defendants' motions should be granted, the five classes should be decertified, and the five complaints dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaints against them.

Motion for reargument is granted, and upon reargument, the unpublished decision and order of this Court entered on July 16, 1998 (Appeal Nos. 286-292N) is recalled and vacated in its entirety and a new decision and order substituted therefor.

Motion for leave to appeal to the Court of Appeals, and said motion is granted, as indicated.

WALLACH, WILLIAMS and TOM, JJ., concur.

Orders, Supreme Court, New York County, entered on or about October 28, 1997 and October 31, 1997, respectively, reversed, on the law, without costs, plaintiffs' motions for class certification denied, defendants' motions to dismiss granted, the five classes decertified and the five complaints dismissed.

The unpublished decision and order of this Court entered herein on July 16, 1998 is hereby recalled and vacated. Motion for leave to appeal to Court of Appeals is granted.