OPINION OF THE COURT
STAPLETON, Circuit Judge:
Appellee Hadis Nafar (“Nafar”) filed a class action complaint against appellant Hollywood Tanning Systems, Inc. (“Hollywood Tans”), stating claims for violation of the New Jersey Consumer Fraud Act (“NJCFA”), fraud, unjust enrichment, breach of warranty, and injunctive relief, alleging that Hollywood Tans distorts the benefits of indoor tanning and deceptively fails to provide adequate warnings concerning exposure to ultraviolet (“UV”) light. The District Court granted Nafar’s motion for class certification. We granted Hollywood Tans’ petition for interlocutory review under Fed.R.Civ.P. 23(f).
The appeal presents four principal issues. First, we must determine whether the District Court erred by not defining either the class or the class claims, as required by Rule 23(c). We conclude that it did. Second, we must determine whether the District Court erred by failing to conduct an adequate choice-of-law analysis when the potential class members for this consumer fraud action hail from numerous states. We conclude that it did. Third, we must determine whether the District Court erred by failing to consider evidence suggesting that individual issues of fact and law regarding causation predominate over common issues. We conclude that it did. Finally, we must determine whether the District Court erred in failing to consider whether res judicata would apply to potential personal injury claims, and therefore whether Nafar was an “adequate representative” of the class. We conclude that it did.
I.
Hollywood Tans is the franchisor of a nationwide chain of indoor tanning salons. Hollywood Tans is incorporated and has its principal place of business in New Jersey. It manufactures the tanning booths, provides the computer software system, and creates the marketing materials that its franchisees use. All these activities, and others, are performed in New Jersey. During the time of the District Court proceedings, there were approximately 300 Hollywood Tans franchise locations in twenty-one states.
Tanning booths emit and expose the user to UV light. They are regulated by the Food and Drug Administration (“FDA”). FDA regulations require that each machine bear a label that states:
DANGER — Ultraviolet radiation. Follow instructions. Avoid overexposure. As with natural sunlight, overexposure can cause eye and skin injury and allergic reactions. Repeated exposure may cause premature aging of the skin and skin cancer. WEAR PROTECTIVE *218 EYEWEAR; FAILURE TO MAY RESULT IN SEVERE BURNS OR LONG-TERM INJURY TO THE EYES. Medications or cosmetics may-increase your sensitivity to the ultraviolet radiation. Consult physician before using sunlamp if you are using medications or have a history of skin problems or believe yourself especially sensitive to sunlight. If you do not tan in the sun, you are unlikely to tan from the use of this product.
21 C.F.R. § 1040.20(d)(l)(i).
Hadis Nafar, a citizen of New Jersey, purchased a single tanning session in 2001 at the Hollywood Tans salon in Warren, New Jersey. She alleges that she was told that the tanning machine would block out harmful rays, “so I wouldn’t see the same effects as if I went outside and tanned.” Appx. at 425-26. She also alleges that the only health risk she was informed of was damage to her eyes. In April 2005, Nafar went to the Hollywood Tans salon in Pis-cataway, New Jersey, where she purchased a membership package. She tanned at least three times a week until March 2006. The only health related topic that she discussed with the attendant in Piscataway was eyewear.
Nafar asserts claims against Hollywood Tans on behalf of a nationwide class of individuals who purchased indoor tanning services. Her claims seek to remedy economic injury allegedly caused by her decision to purchase tanning sessions either without being adequately informed, or being misinformed, of the health risks associated with indoor tanning. She testified that, had she known of the health risks, she would not have purchased the tanning sessions. Nafar has disavowed any claim for personal injury on her own behalf and on behalf of the class. The complaint was filed in New Jersey state court and removed by Hollywood Tans to the District Court.
The parties conducted class discovery. Both parties retained experts who conducted surveys with respect to consumers’ views about the health risks associated with indoor tanning. The expert surveys were designed to determine the level of awareness among consumers of the health risks associated with indoor UV tanning, and the impact of that awareness, if any, on the decision to use indoor tanning services.
It is undisputed that Hollywood Tans’ tanning booths contain the labels required by the FDA. The Hollywood Tans labels, however, omit the words “Avoid overexposure” and add the word “possible” before “allergic reactions.” Nafar admitted that she never read the labels but testified that, had she understood the “overexposure” in the label to apply to her tanning at Hollywood Tans, she would have decided not to tan. She further alleges that the franchisees are required to purchase a software system which includes electronic copies of a standard release form and the “Employee Training Manual,” which contains a “Questions & Answers” form. None of these documents, according to Nafar, disclosed the adverse health effects of indoor ultraviolet light exposure.
Following the close of class discovery, Nafar moved to certify the class under Rule 23(b)(2) and 23(b)(3). The class she sought to certify was a nationwide class of people who purchased indoor UV tanning' services from Hollywood Tans since June 2000, with no exceptions other than for persons associated with Hollywood Tans. She sought to certify for class treatment all her claims, except for the common law fraud claim which she withdrew. The District Court granted the motion.
II.
We review a district court’s decision to certify a class for abuse of discretion. *219 Beck v. Maximus, Inc., 457 F.Sd 291 (3d Cir.2006). This includes an inquiry as to whether the district court has found that each of the prerequisites of Rule 23 are met based upon “a rigorous analysis” of the “factual and legal allegations” in the case. In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 309 (3d Cir.2008) (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982); Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir.2001)).

A. Defining the class, class claims, and issues

“An order that certifies a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under Rule 23(g).” Fed.R.Civ.P. 23(c)(1)(B). After the 2003 amendments to Rule 23, we addressed the Rule 23(c)(1)(B) requirements, holding that “Rule 23(c)(1)(B) requires district courts to include in class certification orders a clear and complete summary of those claims, issues, or defenses subject to class treatment.” Wachtel v. Guardian Life Ins. Co. of America, 453 F.3d 179, 184 (3d Cir.2006). We noted that most district court opinions fell short of this standard. We concluded that;
[T]he proper substantive inquiry for an appellate tribunal reviewing a certification order for Rule 23(c)(1)(B) compliance is whether the precise parameters defining the class and a complete list of the claims, issues, or defenses to be treated on a class basis are readily discernible from the text either of the certification order itself or of an incorporated memorandum opinion.
Id. at 185.
Applying this standard to the order at issue, we determined in Wachtel that the order neglected to define the claims, issues or defenses to be treated on a class basis, even though it did contain statements that touched on categories of common issues and claims in analyzing commonality and predominance.
It is conceivable that we could cobble together the various statements quoted above and reach a general inference as to some categories of issues that the District Court believes are appropriate for class treatment. As we have discussed at length, however, that level of direction in a certification order is insufficient under Rule 23(c)(1)(B).
Id. at 189.
Reading the District Court’s opinion and order, it is apparent that the parameters defining the class and a complete list of the claims, issues, and defenses to be treated on a class basis are not readily discernible from the text. Nowhere does the Court expressly define the class or list the class claims and issues. In the “commonality” discussion, the Court does state that Nafar has asserted “no less than six common issues of law and fact” and then provides some examples. Appx. at 19-20. However, this is not a complete list of the claims and issues. Nor does the Court conclude which issues will apply specifically to the class. It is also true that the Court concludes that Hollywood Tans “has provided a generalized defense that could apply to the majority, or entire, class” in the “typicality” discussion, but the Court does not discuss what this defense is. Appx. at 22. In the “predominance” discussion, the Court concludes that the NJCFA will apply to the entire class, but Nafar does not limit her claims to those arising under the NJCFA, so this is not a complete list of the claims.
On remand, the District Court should comply with the Rule 23(c) requirements as explained by this Court in Wachtel.

*220
B. Choice of law analysis as it relates to the class claims

In the context of class action certification, the Supreme Court has stated that a district court “may not take a transaction with little or no relationship to the forum and apply the law of the forum in order to satisfy the procedural requirement that there be a ‘common question of law.’ ” Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 821, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985). A court “must apply an individualized choice of law analysis to each plaintiffs claims.” Georgine v. Amchem Prod., Inc., 83 F.3d 610, 627 (3d Cir.1996) (citing Shutts, 472 U.S. at 823, 105 S.Ct. 2965). In a diversity case, the forum state’s choice of law rules govern. See Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co., 960 F.2d 377, 379 (3d Cir.1992).
Since the District Court’s decision in this case, the New Jersey Supreme Court has adopted a new framework for resolving conflict of law disputes arising out of tort claims. In P.V. v. Camp Jaycee, both the trial court and the Appellate Division applied New Jersey’s flexible “governmental interests” test to a claim filed by a New Jersey resident against a New Jersey charity in which the child alleged he was sexually abused at the charity’s camp in Pennsylvania. 197 N.J. 132, 962 A.2d 453 (2008). The New Jersey Supreme Court noted that it has traditionally denominated its conflicts approach as a governmental interest analysis, but has continuously resorted to the Second Restatement in resolving conflict disputes arising out of tort. The Court declined to apply the traditional flexible governmental interest test to the tort claim, instead opting to apply the Second Restatement’s “most significant relationship” test and the corresponding choice of law factors included in the Second Restatement. Id. at 455; see Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437 (D.N.J.2009) (applying New Jersey’s most significant relationship test to plaintiffs’ tort and breach of contract claims in class action).
New Jersey’s most significant relationship test consists of two prongs. The first prong of the analysis requires a court to examine the substance of the potentially applicable laws in order to determine if an actual conflict exists. In Agostino, applying the most significant relationship test to a NJCFA claim, the Court concluded that actual conflicts exist between the NJCFA and the consumer protection laws of other states, noting a number of differences among the states’ laws. 256 F.R.D. at 461-62 (citing Elias v. Ungar’s Food Prod., Inc., 252 F.R.D. 233, 247 (D.N.J.2008); Fink v. Ricoh Corp., 365 N.J.Super. 520, 839 A.2d 942 (N.J.Super. Ct. Law Div.2003)).
The second prong of the most significant relationship test requires the Court to weigh the factors enumerated in the Restatement section corresponding to the plaintiffs’ cause of action. See Agostino, 256 F.R.D. at 462. In Agostino, the plaintiffs were seeking to assert claims under the NJCFA, and the Court applied the conflict of laws analysis of Restatement Section 148 for claims sounding in fraud or misrepresentation. Id. Under Section 148(1) of the Restatement:
When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant’s false representations and when the plaintiffs action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the *221 local law of the other state will be applied.
Restatement (Second) of Conflict of Laws § 148 (1971). “This Section recognizes that the state in which a prospective plaintiff acted in reliance on a defendant’s fraud is presumed to have the predominant relationship to the parties and the issues in the litigation.” Agostino, 256 F.R.D. at 462.
The Court in Agostino concluded that the plaintiffs received the allegedly false bills in their home states and likely paid the amount by making a payment from their respective home states. Although the purportedly illegal billing practices may have emanated from the defendants’ home state of New Jersey, they were directed at each plaintiffs home state. The Court found that there was a strong presumption under Section 148 that the consumer fraud law of each class plaintiffs home state should apply to his respective claim, and further that nothing in the analysis of the principles delineated in Section 6 of the Restatement rebuts the presumption that each prospective plaintiffs home state has the most significant interest in litigating its residents’ claims. The Court rejected the plaintiffs’ claim that the NJCFA should apply nationwide, instead finding that each state has an overwhelming interest in seeing its own consumer protection statute govern in cases where residents were victims of fraud perpetrated within the state’s borders. Id. at 463.
Agostino’s Restatement Section 6 analysis did not change its conclusion that each plaintiffs home state had the most significant interest in the litigation. In the first instance, it is for the District Court here to consider the Section 6 factors as they relate to the facts of this claim on remand. However, we have been referred to no Section 6 considerations that would appear to rebut the presumption that each prospective plaintiffs home state has the most significant interest in litigating its residents’ claims. See Agostino, 256 F.R.D. at 468 (The New Jersey Supreme Court has articulated five principles underlying Section 6: “(1) interstate comity, (2) the interests of the parties, (3) the interests underlying the substantive body of law, (4) the interests of judicial administration, and (5) the competing interests of the states.”) (internal quotation marks and citation omitted).
In determining that the Rule 23(b)(3) requirements were met, the District Court in this case determined that common questions of law predominate because the NJCFA applied to the claims of all members of the national class:
The NJCFA will apply to all class members because this particular law governs Defendant’s behavior and uniform policies. New Jersey has a strong interest in this litigation because the case’s outcome will likely affect Defendant’s nationwide behavior.... Indeed, the NJCFA is one of this nation’s strongest consumer protection laws and its application will not frustrate other states’ consumer protection laws.
Appx. at 25.
On remand, the District Court should conduct a choice of law analysis under New Jersey’s most significant relationship test, looking to the Restatement and Agos-tino. If the District Court concludes that each plaintiffs home state law should apply, the Court should then determine whether common questions of law nevertheless predominate and whether a class action would be a superior method of adjudication.

C. The Rule 23(b)(3) predominance factor

Certification under Rule 23(b)(3) is permissible only when the court “finds that the questions of law or fact common to class members predominate over any ques *222 tions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” Fed.R.Civ.P. 23(b)(3). The twin requirements of Rule 23(b)(3) are known as predominance and superiority. In re Hydrogen Peroxide, 552 F.3d at 310. This Court has recently explained the predominance inquiry:
Predominance ‘tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation,’ Amchem, 521 U.S. at 623, 117 S.Ct. 2231, a standard ‘far more demanding’ than the commonality requirement of Rule 23(a), id. at 623-24, 117 S.Ct. 2231, ‘requiring more than a common claim,’ Newton, 259 F.3d at 187. ‘Issues common to the class must predominate over individual issues...,' In re Prudential Ins. Co. Am. Sales Practice Litig., 148 F.3d 283, 313-14 (3d Cir.1998). Because the ‘nature of the evidence that will suffice to resolve a question determines whether the question is common or individual,’ Blades v. Monsanto Co., 400 F.3d 562, 566 (8th Cir.2005), ‘a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.’ In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir.2008)[ ] (quoting Waste Mgmt. Holdings, Inc. v. Moivbray, 208 F.3d 288, 298 (1st Cir.2000)). [FN omitted]. ‘If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable.’ Newton, 259 F.3d at 172. Accordingly, we examine the elements of plaintiffs’ claim ‘through the prism’ of Rule 23 to determine whether the District Court properly certified the class. Id. at 181.
In re Hydrogen Peroxide, 552 F.3d at 310-11 (emphasis added).
The District Court concluded that common issues in this class action would predominate because (1) all legal issues would be governed by the NJCFA, and (2) because “Defendant’s alleged misrepresentations and omission concerning the negative consequences related to indoor tanning are alleged to be uniform.” A. at 26. Once the District Court determines which state consumer fraud laws will apply to various members of the proposed class, it must examine the elements of the causes of action provided by those laws to determine whether common or individual issues will predominate. We take this opportunity to comment on the District Court’s “predominance” analysis under New Jersey law, realizing that on remand New Jersey’s statutory scheme will be implicated at least as to the claims of Nafar and Hollywood Tans’ other New Jersey customers.
The NJCFA imposes liability on any person who uses: “ ‘any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.’ ” Internat'l Union of Operating Eng’rs Local No. 68 Welfare Fund v. Merck & Co., Inc., 192 N.J. 372, 929 A.2d 1076, 1086 (2007) (quoting N.J.S.A. 56:8-2). “[T]o state a CFA claim, a plaintiff must allege three elements: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the defendants’ unlawful conduct and the plaintiffs ascertainable loss.” Id. (internal quotation marks, alterations and citation omitted).
The third prong could be viewed as requiring inquiry into individual class member’s motivations. However, the District Court cited cases holding that a defendant’s common course of conduct alone may support a finding of predominance *223 under the NJCFA, see, e.g., Varacallo v. Massachusetts Mutual Life Ins. Co., 332 N.J.Super. 31, 752 A.2d 807 (N.J.Super.Ct.App.Div.2000); Elias v. Ungar’s Food Prod., Inc., 252 F.R.D. 233, 238 (D.N.J.2008). It thus concluded that “common questions of law predominate because New Jersey law is central to this litigation.” A. 25. However, this reasoning minimizes the complexity of the issue. Indeed, evidence of plaintiffs’ conduct relevant to the causation issue cannot be ignored without comment in a predominance analysis. This is because the Supreme Court of New Jersey has held that individual issues regarding plaintiffs behavior may, in certain cases, defeat predominance in a NJCFA class action, despite the uniformity of a defendant’s misrepresentations or omissions. See Internat'l Union, 929 A.2d at 1087. On remand, the District Court should carefully consider these views in deciding the “predominance” issue under New Jersey law.
Hollywood Tans insists that the District Court did not resolve the factual disputes regarding the extent to which class members knew of some or all of the health risks and the extent to which that would have altered their decisions. Nafar responds that “a rigorous analysis” of the evidence demonstrates that the class members have predominantly common beliefs as to the health effects of indoor tanning and react in a resoundingly similar manner to information material to their purchasing decision. Appellee’s Br. at 34. She also contends that it will not be necessary to resolve those issues.
While Nafar may be correct, the District Court did not conduct “a rigorous analysis” of the evidence to reach its conclusion, as In re Hydrogen Peroxide requires. As we have noted, it commented on nothing other than the uniformity of the defendant’s misrepresentations and omissions. Hollywood Tans has presented arguments and expert evidence in support of the position that individual issues predominate and the District Court has not addressed them. On remand, the Court should consider the evidence presented, resolve any disputes relevant to the predominance issue, and consider the elements of the underlying claims to determine if individual issues predominate over common issues of fact and law,

D. Adequate representation of a class, which does not exclude individuals with personal injury claims, by a named plaintiff only claiming economic harm

Hollywood Tans points out that the class proposed by Nafar includes all individuals who purchased tanning services from Hollywood Tans and does not exclude people who may have personal injury claims, even though Nafar expressly disclaims any claims based on personal injuries and personal injury claims would not be pursued in the class litigation.[1] Hollywood Tans contends that it was error for the District Court to find that Nafar adequately represented the interests of the class without any analysis of whether disavowing claims for personal injury, arising from the same conduct challenged in this case, would adversely affect members of the class. Hollywood Tans stresses that a claim for economic damages arising out of a particular set of facts or a particular wrong, once litigated, can operate to bar a claim for personal injury arising out of the same facts or wrong. Hollywood Tans insists that, when a plaintiff in a class action decides to split her claim, the named plain *224 tiff’s strategy implicates important interests of the class that must be carefully considered by the district court. It was therefore an abuse of discretion, in Hollywood Tans’ view, to certify the class without considering these important issues affecting adequacy.
In this action, Nafar alleges that Hollywood Tans misrepresented and omitted material facts about the health risks associated with indoor tanning. She alleges that, had she known those facts, she would not have used Hollywood Tans’ services and therefore, as a result of Hollywood Tans’ conduct, she suffers economic harm in the form of dues and fees paid to Hollywood Tans for the services. Other class members may also allege that they would not have used Hollywood Tans’ services had they known about the health risks, and that they suffered both economic harm and harm in the form of personal injury because the tanning services they used at Hollywood Tans resulted in the exact health risks that Hollywood Tans failed to warn them about. These claims appear to arise from the same set of facts and transactions. By seeking only partial relief, Nafar may be engaging in claim splitting, which is generally prohibited by the doctrine of res judicata. See, e.g., Krueger v. Wyeth, Inc., 2008 WL 481956, at *2, 4 (S.D.Cal. Feb.19, 2008) (noting that by leaving the class open to those who suffered personal injury but not pursuing damages for personal injuries, the plaintiff was engaging in claim-splitting, which the Court determined was a compelling reason to deny class certification because the plaintiff was an inadequate class representative under the current class definition); Small v. Lorillard Tobacco Co. Inc., 252 A.D.2d 1, 11, 679 N.Y.S.2d 593 (N.Y.App.Div.1998) (under New York’s transactional approach to res judicata, by only seeking economic recovery the plaintiffs would preclude other potential class members’ chances of bringing potential claims for personal injury and emotional distress, and noting that the ability to opt out of the class was insufficient to protect the rights of putative class members who would want to seek remedies other than those chosen by the representatives); see also In re Methyl Tertiary Butyl Ether (“MTBE”) Prod. Liability Litig., 209 F.R.D. 323, 339-40 (S.D.N.Y.2002); Clay v. American Tobacco, Co., 188 F.R.D. 483, 494 (S.D.Ill.1999); Pearl v. Allied Corp., 102 F.R.D. 921, 923-24 (E.D.Pa.1984); Feinstein v. Firestone Tire and Rubber Co., 535 F.Supp. 595, 606 (S.D.N.Y.1982).[2] But see *225 Aspinall v. Philip Moms, 442 Mass. 381, 813 N.E.2d 476, 488 n. 19 (2004) (the plaintiffs did not seek damages for personal injuries, but the Court rejected the defendants’ argument that principles of claim preclusion might operate to harm the interests of future class members who may wish to assert personal injury claims in a future action).
Regardless of whether Nafar is correct that the personal injury claims would be based on different facts and therefore would not be precluded by res judicata, the District Court failed to consider this very important issue in assessing the adequacy of representation requirement. For that reason the Court should consider, on remand, New Jersey’s doctrines regarding preclusion, whether other states’ preclusion doctrines would apply, the specific claims and facts alleged here, and whether any potential future claims by class members with personal injury would be at risk of being barred by res judicata. The District Court may, of course, consider redefining the class, as suggested at argument before us, to exclude personal injury claimants if it determines that this would avoid any potential res judicata preclusion and would satisfy the other requirements of Rule 23.
III.
The order of the District Court certifying a class will be vacated. On remand, if Nafar continues to seek class certification, the District Court will (1) define the class and the class claims and issues as required by Rule 23(c) and explained in Wachtel; (2) conduct a choice-of-law analysis under New Jersey’s most significant relationship test; (3) consider the evidence related to consumer knowledge and actions to determine whether individual issues of “causation” would predominate; and (4) address whether res judicata would apply to bar potential personal injury claims and, if so, whether that fact renders Nafar an inadequate class representative.

. We note that since the District Court did not define the class we cannot be certain that this is the class definition. However, that is the class as defined by Nafar in her motion for class certification, which the District Court granted.

. Claim splitting may also be prohibited under New Jersey's "entire controversy doctrine”:
In determining whether successive claims constitute one controversy for purposes of the [entire controversy] doctrine, the central question is whether the claims against the different parties arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding. One measure of whether distinct claims are part of an entire controversy is whether parties have a significant interest in the disposition of a particular claim, one that may materially affect or be materially affected by the disposition of that claim. The test for whether claims are "related” such that they must be brought in a single action under the New Jersey entire controversy doctrine ... [is] as follows: if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation.
Fomarotto v. American Waterworks Co., Inc., 144 F.3d 276, 279 (3d Cir.1998) (quoting DiTrolio v. Antiles, 142 N.J. 253, 662 A.2d 494, 502 (1995)).