*776 OPINION OF THE COURT
Thomas R. Jones, J.
This is a class action brought pursuant to CPLR 901, et seq., in which plaintiff seeks a protective order (CPLR 3103) to prevent the defendants from deposing him concerning the following matters: (1) whether the plaintiff was willing and able to bear the financial expenses necessary to prosecute this class action; (2) how the plaintiff decided to bring the lawsuit and, whether anyone had solicited the plaintiff to commence the suit; (3) concerning financial arrangements the plaintiff has made with his attorney, vis-á-vis legal and litigation fees and expenses; and (4) whether the plaintiff has personal knowledge of the allegations in his complaint.
The defendants’ cross motion requests an order to compel the plaintiff to respond to these questions and other relevant inquiries which may be prompted by the answers given.
THE FACTS
In his complaint, the plaintiff alleges that the defendants, two publicly owned corporations and various members of their board of directors, with intent to deceive and defraud him and a class of 3,000 other holders, of an estimated 300,000 shares of the common stock of Elgin National Industries, falsely and fraudulently advertised the value, and facts which affected the value, of the stock of the corporation, and thereby induced him and other stockholders to sell their shares to the corporation, at a loss to the class in the sum of 18 million dollars. Plaintiff has commenced this class action on behalf of himself and other persons who tendered their shares of stock of Elgin National Industries, Inc., in response to the aforesaid misleading tender offer on and after March, 1976. The plaintiff also claims that by disseminating the alleged false information the defendants violated sections 339-a and 352-c of the General Business Law.
During an examination before trial defendants’ counsel sought unsuccessfully to question the plaintiff concerning his financial and fee arrangements with the attorney of record and in regard to his assets, as well as his willingness and ability to furnish the considerable expenses of the action. The plaintiff also refused to reveal the circumstances under which he initiated the litigation. The plaintiff declined to answer these questions, on the advice of counsel, on the grounds that such matters were irrelevant to establish the five prerequisites *777 for a class action as set forth in CPLR 901, et seq* The statutory requirements, history and intrinsic nature of class actions mandate that the plaintiff must respond to the questions propounded.
Defendants’ cross motion is granted.
Although CPLR 904 (subd [d], par I) is more liberal than Federal rules in regard to the expenses of notification, in that this section permits "the court * * * [to] require that the defendant bear the expense of notification, or may require each of them to bear a part of the expense in proportion to the likelihood that each will prevail upon the merits”, plaintiff, in the first instance, must clearly demonstrate that he has and will use sufficient financial resources to fairly and adequately represent the class involved, and that his financial resources are adequate to pursue the suit to completion (cf. Ralston v Volkswagenwerk, 61 FRD 427), the reason being that plaintiff’s lack of sufficient money to prosecute the action may inhibit the proper litigation of the substantial property interests of the whole class. In order to sustain the burden of proof, as he must, that he is an appropriate plenipotentiary of the class he assumes to represent, a plaintiff must demonstrate, at the threshold, that he can afford and is prepared to pay the financial costs of the litigation out of his own pocket.
In the nature of a case such as this, which involves such high stakes for both sides, the plaintiffs financial means and commitment to advance the substantial litigation costs may be crucial. In Ralston v Volkswagenwerk (supra, p 434), the court declared that a plaintiff "[s]eeking to represent a large group *778 of people as a class representative in a lawsuit [assumes] a very heavy burden. It should never be undertaken lightly, and the court should allow such representation only upon a firm foundation that the named plaintiffs are willing and financially able to shoulder the burden * * * Inadequate financing threatens the procedural and substantive interests of the class.”
The court in Rode v Emery Air Frgt. Corp. (76 FRD 229, 232) in evaluating Sanderson v Winner (507 F2d 477, cert den sub nom. Nissan Motor Corp. in U. S. A. v Sanderson, 421 US 914) said, where the "scope of the putative class is large” or "nationwide” the court has a " 'legitimate concern about the ability of the plaintiffs to successfully lead a class of this magnitude’ ”, "the financial status of the representative plaintiff is relevant to class certification”, and Sanderson "actually affirmatively sanctions disclosure in this type of nationwide class action.”
This case presents a class of substantial magnitude, the members of which are probably scattered over the United States and perhaps foreign countries. The plaintiff contends that no New York case supports the defendants’ position in this regard. Not so. In two recent cases, New York courts at Trial Term have required plaintiffs to answer questions concerning their financial resources and willingness to defray the costs of class action litigation (see Weitzman v Bache Halsey Stuart, NYU, Nov. 4, 1977, p 5, col 1; Vallone v Delpark Equities, 95 Mise 2d 161). In his commentary on CPLR 901, Dean Joseph M. McLaughlin remarked that "[i]t is noteworthy that the Uniform Class Action Act, § 3(b) (3) provides for an examination of the financial resources of the class representative” (see McKinney’s Cons Laws of NY, Book 7B, CPLR 901:5, p 326). In Vallone (supra) Justice Kassel stated that, due to the recency of the enactment of CPLR article 9 and paucity of decisions interpreting the provisions of class action legislation, New York courts should rely on Federal decisions interpreting rule 23 of the Federal Rules of Civil Procedure (US Code, tit 28, Appendix). It was his view that: "The expenses of investigation, preparation, notification and attorney’s fees necessary to maintain a class action may be extremely high. While an individual plaintiff may decide to bear the risk of being ill-prepared, a class representative has a fiduciary responsibility to see that the other class members relying on him are properly represented.” (Vallone v Delpark *779 Equities, supra, p 168.) Justice Arnold Fein in Weitzman (supra) also relied on the rationale of Ralston (supra).
While these judicial opinions create a harsh legal reality in which only well-to-do persons can afford to bring class actions in New York State, a result that flies in the face of our democratic traditions which guarantee access to the court by rich and poor, any volunteer who comes forward to represent the substantial financial interests of a large class of people in such difficult and expensive litigation is reasonably bound to show that he is financially equal to the tasks involved. This court would uphold the principle that, whatever their rank or riches, all men are equal before the law, but recognizes that, in class actions, at least, men of means are more equal than other men.
In regard to the inquiries relating to possible solicitation of class members by plaintiff’s attorneys, many Federal courts have declared that solicitation is endemic to class action certification cases. Suspicions of champerty and instances of maintenance haunt this type of litigation (Korn v Franchard Corp., CCH Fed Sec Law Reptr, par 92,845 [SONY 1970]; Taub v Glickman, 14 FR Serv 2d 847; cf. A Critical Analysis of Rules Against Solicitation by Lawyers, 25 U Chi L Rev 674). The intrinsic nature of class actions ineluctably creates circumstances which engender solicitation of potential parties plaintiff. The litigant and his lawyer necessarily reach out for unknown and missing members of the class which they propose to represent. In Greenfield v Villager Inds. (483 F2d 824, 832, n 9), the United States Court of Appeals for the Third Circuit took judicial notice of the lawyer’s decisive role in class actions and said that: "Experience teaches that it is counsel for the class representative and not the named parties, who direct and manage these actions. Every experienced federal judge knows that any statements to the contrary are sheer sophistry.” In Stavrides v Mellon Nat. Bank & Trust Co. (60 FRD 634, 637, n 6), Judge McCune took cognizance of "the characteristics of the class action which lead to its abuse through solicitation and maintenance”, and remarked that: "[W]e intend to very vigorously assert our 'broad administrative, as well as adjudicative power’ to assure ourselves that there is no ethical misconduct involved here before granting class status.” (Cf., also, P. D. Q. of Miami v Nissan Motor Corp. in U. S. A., 61 FRD 372.)
New York courts, following the logic and law of Federal *780 cases, will deny class action status or decertify a class when counsel’s conduct is found to be champertous. In Korn v Franchard Corp. (supra) and Simon v Merrill Lynch, Pierce, Fenner & Smith (16 FR Serv 2d 1021) for example, counsel’s attempt to stir up litigation was found to be prejudicial to the interests of the class and rendered the attorney incapable of protecting those interests (cf., also, Stavrides v Mellon Nat. Bank & Trust Co., supra, p 636).
Accordingly, defense counsel may inquire of plaintiff concerning the circumstances under which he and his attorney concluded an agreement to prosecute this action, including reference to the communication with and assembly of the class which the plaintiff proposes to represent. In harmony with the rationale of Sayre v Lincoln Fed. Sav. & Loan Assn. (65 FRD 379), the defendant’s inquiry may include questions of how the litigation expenses are to be financed. This direction must not be interpreted as an insinuation that this court has found or suggests that plaintiff’s attorney has engaged in any unethical conduct by reason of the unavoidable exigencies of class action litigation.
Finally, plaintiff contends that he ought not to be subjected to a catechism on his knowledge of the facts and the law of this action, on the grounds that such an inquisition amounts to "merit discovery,” and is in any event inappropriate at this stage of proceedings. The plaintiff’s knowledge of the details of his complaint may be probed by the defendant to the limited extent required to explore the question whether he is a proper representative of the class or one who merely offers himself, pro forma.
The plaintiff’s knowledge and competency may be discovered in the process of inquiring as to how much he knows about his own case to enlighten the court in regard to his real ability to represent the class. Unless plaintiff plays an integral rather than a superfluous role in the litigation, he may not be authorized to represent the class. The court in Matter of Goldchip Funding Co. v 20th Century Corp. (61 FRD 592, 594) observed that: "The class is entitled to more than blind reliance upon even competent counsel by uninterested and unexperienced representatives. A proper representative can offer more to the prosecution of a class action than the mere fulfillment of the procedural requirements”.
Questions in this regard shall be limited to issues of fact rather than matters of law, except as such latter queries may *781 relate to costs, fees and expenses of the action, and the willingness of the plaintiff to foot these hills.
The plaintiff’s motion for a protective order is denied. Defendants’ motion to require plaintiff to respond to the questions propounded, as aforesaid, is granted to the extent indicated in this opinion.

 "§ 901. Prerequisites to a class action.
"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:
"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
"4. the representative parties will fairly and adequately protect the interests of the class; and
"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.
“b. Unless a statute creating or imposing a penalty, or a minimum measure of recovery specifically authorizes the recovery thereof in a class action, an action to recover a penalty, or minimum measure of recovery created or imposed by statute may not be maintained as a class action.”