OPINION OF THE COURT
Howard A. Zeller, J.
Plaintiff Cornell University moves for summary judgment pursuant to CPLR 3212 for $1,474.64 plus interest, and for dismissal of defendant Thomas Dickerson’s class action counterclaims pursuant to CPLR 3211 and 902. Mr. Dickerson cross-moves pursuant to CPLR 3211 (subd [d]) to deny Cornell’s motion for summary judgment.
Mr. Dickerson attended the Law School and Graduate School of Business Administration at Cornell University from 1969 to 1973, graduating with JD and MBA degrees. He signed three student loan promissory notes dated August 24, 1972, December 12, 1972, and January 29, 1973, which totaled $1,800. Cornell alleges Mr. Dickerson defaulted by failing to pay the installment due September 15, 1974, and seeks judgment for a balance due of $1,474.64 plus interest.
Mr. Dickerson’s answer includes several affirmative defenses and three causes of action as part of a class action counterclaim. Mr. Dickerson alleges he is part of a class of approximately 5,000 persons who contracted with Cornell to receive educational services and to receive loans; Cornell misrepresented the true value of these services, which was slight; Cornell forced Mr. Dickerson and other class members under duress to sign loan agreements; rescission of the agreements, and damages of at least $15,000,000 are demanded.
*201 Summary judgment is a drastic remedy and will not be granted if there is any doubt of the existence of a material and triable issue of fact. (Siegel, New York Practice, § 278.) Once the movant has made out a prima facie case, his opponent must lay bare his own proof and show evidentiary facts sufficient to create a triable factual issue. Issue finding, not issue determination is the key. (Fried v Bower & Gardner, 46 NY2d 765; Freedman v Chemical Constr. Corp,, 43 NY2d 260, 264; Siegel, New York Practice, § 278; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR, C3212:16, pp 436-437.)
Cornell has submitted evidence showing the three promissory notes, the three canceled checks received by Mr. Dickerson, a "student loan summary sheet” acknowledging these loans, and an affidavit by the university bursar outlining the payments made and balance owing. Cornell has shown a prima facie case for the relief sought.
The first dispute is over the nature of the promissory notes. Cornell says the notes were only loan agreements, while Mr. Dickerson says they are contracts for educational services. The notes are entitled "Cornell University Student Loan Program,” and read in part "For Value Received I promise to pay to Cornell University, or order $(amount) on or before Sept. 15, 1973 with interest thereon at the rate of 4% per annum commencing on the date that I am no longer a student at said University”; the remainder of each note contains a repayment schedule and other loan-related information. There is no mention of educational services or extracurricular programs of any sort. The notes are clearly limited to the loans and terms of repayment; Mr. Dickerson is reading something into them that is simply not there.
Mr. Dickerson avers that Cornell "used the duress of termination and withholding any degrees unless I executed the contracts.” He furnishes no details such as who he spoke with, or when and where the duress was inflicted upon him. Mr. Dickerson has presented no evidentiary facts regarding this claim.
Mr. Dickerson also says the educational services provided pursuant to the notes had little or no value, contrary to Cornell’s representations. No educational services were provided under the notes; Cornell gave him only what it promised, $1,800. Further, Mr. Dickerson’s bald assertion of misrepresentations is unsupported by any details regarding their *202 form, who made them, or when and where. This failure to lay bare any supporting facts is fatal to this claim.
Cornell also seeks dismissal of Mr. Dickerson’s counterclaims for failure to state causes of action upon which relief can be granted (CPLR 3211, subd [a], par 7) and for failure to meet the requirements of class actions (CPLR 901, 902).
CPLR 901 provides in part:
"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:
"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;
"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;
"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;
"4. the representative parties will fairly and adequately protect the interests of the class; and
"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy.”
All of the above requirements must be met in order to proceed as a class action. (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.06.) Although one commentator has expressed doubt whether the propriety of maintaining a class suit could be considered on a motion under CPLR 3211 (subd [a]) (2 Weinstein-Korn-Miller, NY Civ Prac, par 902.11), the Appellate Division, Fourth Department, has held the class action requirements of CPLR 901 may indeed be considered on a motion to dismiss under CPLR 3211 (subd [a], par 7) (Wojciechowski v Republic Steel Corp., 67 AD2d 830.) Accordingly, this court will consider whether Mr. Dickerson’s claims state a cause of action under the standards of CPLR 901.
The first question is whether there are questions of law and fact common to the class which predominate over questions affecting individual members. "The use of a predominance test was not meant to create any rigid criteria in determining whether a class action should proceed but a pragmatic, functional test with the determination testing in each case upon whether the group is more bound together by a mutual interest in the settlement of common questions than it is divided by the individual members’ interest in matters pecu *203 liar to them.” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.08.)
Does this class have predominantly common interests in Mr. Dickerson’s claim that the educational services they received were of little value? Mr. Dickerson claims these services "consisted of class room instruction, giving and administering tests, providing and maintaining facilities and granting degrees.” There is no allegation or proof that the services afforded Mr. Dickerson were identical, or even substantially similar, to the services afforded others in the class; no claim that the class members shared common courses or professors, were given the same tests, used the same facilities, or were granted the same degrees; and no clue as to how Mr. Dickerson’s individual courses and degrees in business and law were like the courses and degrees afforded other students in disciplines from anatomy to zoology. Indeed, Cornell’s vice-president of research avers that the university has 11 schools with their own requirements for degrees, and each year Cornell employs more than 2,000 teachers, offers more than 3,500 courses, and enrolls more than 14,000 students. The possible permutations are obvious; the problem with joining a class on this issue is that the purported class received not one education, but as many distinct educations as it has members.
The students are also set apart by perhaps the most essential part of an education, the individual’s own aptitude and desire to learn. Any determination of the "value” of educational services must consider the response of the students— how much they learn — and an integral part of the learning experience is the individual’s own intelligence and attitude. Mr. Dickerson’s narrow focus and definition of educational services ignore the nature of an education, and the vagaries of measuring its value.
In sum, while the alleged class members were all students at Cornell, the practical effect of the individual curricula, capabilities, and personalities is to create isolated questions of law and fact for each student, which predominate over any shared interests.
Do common questions predominate regarding Mr. Dickerson’s claim that Cornell misrepresented the value of its educational services to the class? As discussed earlier, Mr. Dickerson does not give any details about these alleged misrepresentations. Mr. Dickerson has not shown "any one misrepresentation, or group of misrepresentations, or common *204 thread that may be applicable to substantially the entire group.” (Ross v Amrep Corp., 57 AD2d 99, 103, app dsmd 42 NY2d 856.) The court cannot begin to ascertain if there is a common question until Mr. Dickerson shows some kind of a common thread or misrepresentation.
A class action for misrepresentation must show not only a common core of misrepresentation, but class reliance thereon as well. (Strauss v Long Is. Sports, 60 AD2d 501, 506.) In Strauss, plaintiff alleged he purchased New York Nets season tickets in reliance upon advertising that Dr. J. (Julius Erving) would be playing for the team. Dr. J. was subsequently traded, and plaintiff claimed to represent a class of similarly disgruntled season ticket holders. The court said (p 507) that "by no stretch of the imagination may one comfortably presume that a majority of season ticket holders purchased in reliance on the Nets’ newspaper advertising.” The court noted that many season ticket holders might not even have seen the advertising. Tickets might have been purchased because the Nets were the ABA champions; or because they had recently been admitted to the NBA; for business reasons; or geographic location (the Nets’ games were closer to many Long Island fans than the Knickerbockers in Manhattan).
Here, by no stretch of the imagination may the court presume that most class members attended Cornell because of the university’s alleged representations of value. Many students might not have seen the alleged representations. Attendance might have been motivated by a host of factors— family ties, community prestige, geographic location, and the campus appearance, to name a few. Mr. Dickerson is asking the court to assume, without discription, that misrepresentations were made — and to assume, as well, that substantial reliance was present. The court should not engage in such speculation.
Mr. Dickerson’s claim of duress of the class members suffers from the same defect as the misrepresentation claim. There are no probative details alleged, and the court is asked to speculate as to its existence.
Much of the preceding discussion is applicable to the issue of whether Mr. Dickerson’s claims are typical of the class. The particular nature of each student’s curriculum, abilities, and reliance upon representations, makes it impossible to say that Mr. Dickerson is typical of the group. He has failed to submit sufficient proof to raise a factual question on this issue.
*205 Has Mr. Dickerson shown that he will "fairly and adequately protect the interests of the class”? (CPLR 901, subd 1, par 4.) The job of a class representative in this case would not be easy. The interests of about 5,000 people, damages of at least $15,000,000 and the past six years of Cornell’s loan program, are all in issue. With such high stakes, "the plaintiff’s financial means and commitment to advance the substantial litigation costs may be crucial. In Ralston v Volkswagenwerk (61 FRD 427, 434) the court declared that a plaintiff '[s]eeking to represent a large group of people as a class representative in a lawsuit [assumes] a very heavy burden. It should never be undertaken lightly, and the court should allow such representation only upon a firm foundation that the named plaintiffs are willing and financially able to shoulder the burden * * * Inadequate financing threatens the procedural and substantive interests of the class.’ ” (Stern v Carter, 97 Misc 2d 775, 777-778.) Such an inquiry might seem harsh or elitist, and to clash with traditions of equal access to the courts. However, "[t]his court would uphold the principle that, whatever their rank or riches, all men are equal before the law, but recognizes that, in class actions, at least, men of means are more equal than other men.” (97 Misc 2d, at p 779.) Mr. Dickerson has failed to show that he possesses monetary means sufficient to pursue this action with the requisite vigor and to protect the interests of the class members.
There is another reason why Mr. Dickerson does not qualify as a class representative. Under CPLR 901 (subd a, par 4) the court should be alert for plaintiffs suing solely for their own particular claims, and "it seems clear that the basic control given to the court over the conduct of the action should eliminate all but the seriously brought class actions.” (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.10, p 9-36.) The circumstances of this case indicate this is not a seriously brought class action, but simply a former student trying to evade payment of a loan. Mr. Dickerson waited six years after graduation to bring this class action, and even then only as a counterclaim to Cornell’s attempt to collect on the notes.
The final requirement is that a class action must be superior to other available methods for resolving the controversy fairly and efficiently. Due to the particular nature of each class member’s alleged grievance, individual fact finding is necessary, and would be inappropriate and cumbersome in a class action setting. Separate actions brought by the allegedly *206 aggrieved class members are the best way to resolve claims with so many personal variables.
Mr. Dickerson cross-moves pursuant to CPLR 3211 (subd [d]) for an order denying Cornell’s motion for summary judgment and dismissal of Mr. Dickerson’s counterclaims, upon the ground that plaintiff needs discovery to effectively oppose the motions. A motion under CPLR 3211 (subd [d]) should be granted if it appears that facts essential to oppose the motion to dismiss may exist. (Peterson v Spartan Inds., 33 NY2d 463.) Mr. Dickerson has failed to show that such facts may exist.
The motion of Cornell University for summary judgment against Thomas A. Dickerson in the amount of $1,474.64 plus interest, and for the dismissal of Mr. Dickerson’s class action counterclaims, is granted.
The cross motion of Mr. Dickerson seeking denial of Cornell’s motion under CPLR 3211 (subd [d]) is denied.
No motion costs are awarded.