OPINION OF THE COURT
Walter J. Relihan, Jr., J.
The plaintiff, Marie Russo, seeks to become the representative of a class which includes all who purchased a special category of whole life policies, described as N-Pay or Flex Pay contracts, between January 1, 1983 and December 31, 1996. The sales, plaintiff alleges, were induced by written illustrations which falsely represented that the premiums necessary to support the continuance of the insurance would cease, or “vanish”, after a fixed number of annual payments had been made. In years following the sale, Russo and other members of the class were called upon to pay further premiums, beyond those illustrated.
Plaintiff argues that the actuarial principles employed by defendant to justify the depiction of a limited number of premium payments either ignored or violated accepted professional standards. Proper standards, plaintiff states, would have made it plain that the illustrations were inaccurate. Moreover, plaintiff continues, the illustrations were knowingly false and misleading and were circulated by the defendant’s home office to thousands of agents in an effort to stem the flight of investors from ordinary life insurance to other financial products which, in a period of rising interest rates, could generate higher returns. Defendant disputes that analysis, citing the plaintiff’s misunderstanding and misapplication of the actuarial standards, and submits a competing analysis and conclusion.
The actuarial argument, of course, goes to the ultimate merits of the Russo claim, as well as the class claims. The issue on this motion for class certification, however, is not whether the illustrations are false but whether the class claims meet and satisfy the requirements of CPLR article 9. Most importantly, CPLR 901 (a) (2) requires that issues of fact or law, common to the members of the class, must predominate over issues affecting only individual members.
Russo dealt with Susan Weiner, an agent of defendant, when she purchased her policy on or about May 2, 1989. It was their purpose to convert a group policy coverage, available to Russo as an administrative manager at Rogers & Wells, L. L. P., to *774 an individual policy so that its benefits would continue after she left the law firm. It is now conceded that a four-page illustration, dated April 28, 1989, was given to Russo by Weiner. The illustration shows a limited number of premiums but also states, on each of its four pages, that “A dividend change may increase the number of cash premium payments.” Page 3 also reports that “All dividends * * * are based on current dividend schedule which is not guaranteed * * * Dividends reflect current investment, mortality, expense, and federal income tax experience of the company. Changes in current experience can subject dividends to significant fluctuations”. Page 4, in addition to the statements appearing on all four pages, adds that “The dividends used in calculating these indexes are based on current year’s scale and are not guarantees nor estimates of future dividends”.
A close reading of the illustrations given to Russo by Weiner would have revealed that the payment of future dividends was not guaranteed and that the payment of premiums, in addition to those illustrated, could become necessary. The inference is irresistible that plaintiff was not a scrupulous reader of the illustrations or that its admonitions went unnoticed in the welter of the Weiner oral sales presentation. But we need not rely on mere surmise: The plaintiffs own testimony demonstrates that she relied substantially upon the oral presentation of Weiner regarding the terms and conditions of the policy in relation to her wants and needs. Russo testified (deposition, at 68): “All I can say is that I took what Ms. Weiner told me at face value and never really thought about dividends or interest rates or whatever.” Referring to the written policy illustrations, she stated: “I didn’t really pay too much attention to footnotes and this language”. Elsewhere Russo testified that she could not recall reading the language of the illustration presented to her by Weiner or, alternatively, that she may have “browsed through it” but that she didn’t “analyze it” (id., at 32, 36-38).
The fundamental difficulty in the plaintiffs class certification motion lies in the fact that the illustrations, and only the illustrations, tie the class together. However, the sale of defendant’s insurance products is typically consummated by agents and brokers using a variety of methods which may or may not include home office materials. During the class period, defendant sold its insurances through some 35,000 representatives. About 900,000 whole life policies were purchased. The text of the illustrations changed several times during the period. As interest rates fell, each version became more explicit *775 regarding the nonguaranteed nature of the dividends and each more clearly reiterated the possibility that additional premiums might become necessary. Countless combinations and permutations of financial and personal factors may have induced each of the individual sales, whether or not an illustration wás mentioned or displayed by the agent, or “browsed” by the insured. These transactions, counsel advise the court, could number in the tens of thousands.
Russo is the proposed class representative. However, as we have seen, the illustrations played a minor role, and perhaps no role, in her decision to buy. By contrast, the class claim rests upon the contention that the members were seduced and victimized by the false and misleading illustrations which Russo, for the most part, ignored. Hence, her claim is not typical of the class she purports to represent, as required by CPLR 901 (a) (2) (Vermeer Owners v Guterman, 169 AD2d 442, 445, affd 78 NY2d 1114). If we assume that the Russo transaction is typical, the causal connection between any given illustration and any particular sale to a class member would be open to the same serious questions as surround the Russo sale. If the Russo sale is not typical, we can only guess at the role an illustration may have played in other sales. On either hypothesis, a mini-trial would become necessary to determine whether an illustration was shown to the insured, which illustration was shown, whether the illustration was noticed and considered by the insured and, if so, what reliance was placed upon it and, finally, what ultimate effect the illustration had upon the insured’s final decision (Brummel v Leading Edge Prods., NYLJ, Feb. 19, 1998, at 28, col 4 [Sup Ct, NY County]). It is well settled that “individualized proof of reliance is essential to the causes of action * * * for common-law fraud” and that “class actions premised on fraud require proof of reliance by each class member” (Small v Lorillard Tobacco Co., 252 AD2d 1, 8 [1st Dept 1998], citing Vermeer Owners v Guterman, supra, 169 AD2d, at 444).
The utility of the class action concept is based upon the presence of common issues which, once resolved, will expedite a just result in a host of similar cases, many of which could not be prosecuted economically on their own. Based on the evidence before us, including the Russo testimony, we are not tree to assume that sales to the class were triggered by written representations received by each class member under circumstances which would permit the conclusion that the documents were actually considered by the recipients in making a decision *776 to buy the policies (Small v Lorillard Tobacco Co., supra; Karlin v IVF Am., 239 AD2d 562; Norwalk v Manufacturers & Traders Trust Co., 80 AD2d 745, 746; Ross v Amrep Corp., 57 AD2d 99, 103, appeal dismissed 42 NY2d 910; Russo v Massachusetts Mut. Life Ins. Co., Sup Ct, Tompkins County, Mar. 25, 1997, slip opn, at 6-7; Cornell Univ. v Dickerson, 100 Misc 2d 198, 204). The common element, which arguably unites the class, is anything but common.
Concededly, class actions have been allowed even though each member might not be able to assert all of the claims asserted by the class, provided that all class members shared a predominant claim (Pruitt v Rockefeller Ctr. Props., 167 AD2d 14, 22). Accordingly, class actions have been certified where the surrounding circumstances have created a reasonable assurance that all members of the class had seen and relied upon the same allegedly false promotional brochures (King v Club Med, 76 AD2d 123, 127, appeal withdrawn 57 NY2d 777). Neither circumstance is present here.
The plaintiff urges us to apply Massachusetts law to the claims of all class members, based on the defendant’s domicile. Plaintiff’s proposal has found favor when the parties have been able to agree upon the common issues and have devised ways and means by which remaining “questions affecting only individual members” (CPLR 901 [a] [2]) could be resolved. In re Prudential Ins. Co. (148 F3d 283 [3d Cir 1998]) offers a recent and striking example. Here, however, there is no consensus on the issues or the mechanics of resolution. More importantly, the imposition of Massachusetts law will not supply the missing element of factual commonality regarding the sales transactions. This failure is fatal to certification of the class.
Given the lack of commonality, we need not consider or resolve the choice of law issue. It suffices to reiterate that plaintiff has not established that home office materials played a meaningful role in any of the individual sales nor rebutted the conclusion that these materials represent the only substantial link between most class members and the State of defendant’s domicile. The remaining contacts between the members of the class and Massachusetts, so far as the evidence discloses, range between the sporadic and inconsequential to the totally nonexistent. It also appears that significant differences exist between the laws of Massachusetts and those of many of the States in which the sales probably occurred (Joint Opn of Professors Twerski and Henderson, part III, at 28-49). Hence, a certification of the class could require the *777 court to fashion a series of separate and distinct charges and to submit a variety of special verdict forms to the jury. At worst, preceding mini-trials might be needed on the issue of liability. Finally, we note the strong public policy concerns of many States in the regulation of the marketing of insurance products within their borders (viz., 11 NYCRR, ch EX, part 219). These important State interests could be modified, or even superseded, by the differing rules and regulations of Massachusetts. Principles of comity and Federalism, as well as the implications of the Due Process Clause and the Full Faith and Credit Clause, militate against the plaintiffs proposal to impose Massachusetts law upon every claim of each class member (Phillips Petroleum Co. v Shutts, 472 US 797, 814-824).
In any event, and whatever the choice of law, Federal and State procedural due process norms would permit the defense to inquire into the facts and circumstances surrounding what may be thousands of individual sales (Small v Lorillard Tobacco Co., 252 AD2d 1, 8 [1st Dept 1998], supra) and to establish, for example, that other inducements were the competent producing causes of a particular sale rather than a deceptive illustration. In this grinding and sifting process, all notions of commonality and manageability would be overwhelmed and defeated.
The motion for class certification, for all these reasons, must be denied. We take comfort in the fact that many courts, on similar facts, have reached the same result (see, e.g., Goshen v Mutual Life Ins. Co., Sup Ct, NY County, Oct. 21, 1997; Willoughby v John Hancock Mut. Life Ins. Co., Sup Ct, Monroe County, Feb. 3, 1997; and, applying Fed Rules Civ Pro, rule 23, see, Rothwell v Chubb Life Ins. Co., US Dist Ct, NH, Mar. 31, 1998; In re Jackson Natl. Life Ins. Co. Premium Litig., 183 FRD 217 [WD Mich 1998]).
Lastly, the discovery motions of the parties are denied, for the moment, pending our decision on the defendant’s motion to dismiss the Russo individual claim which is scheduled for argument on November 13, 1998.