**Earl KEYES, and the Earl Keyes Irrevocable Trust, Individually and on Behalf of Others Similarly Situated, Plaintiffs,**

v.

**The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. CIVA.3:97CV439LN.**

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 15, 2000.

Richard Taylor Phillips, Smith, Phillips, Mitchell, Scott & Rutherford, Batesville, Dale Danks, Jr., Danks, Simon & Teeuwissen, Jackson, MS, Richard A. Lockridge, Earl F. Kyle, IV, Lockridge, Grindal, Nauen, PLLP, Minneapolis, MN, Andrew S. Friedman, Francis Joseph Balint, Jr., Bonnett, Fairbourn, Friedman & Balint, PC, Phoenix, AZ, for Plaintiff or Petitioner.

John E. Hughes, III, Wells, Marble & Hurst, Jackson, MS, for Defendant or Respondent.

*MEMORANDUM OPINION AND ORDER*

TOM S. LEE, Chief Judge.

This cause is before the court on the motion of plaintiffs Earl Keyes and the Earl Keyes Irrevocable Trust pursuant to Federal Rule of Civil Procedure 23 for class certification. Defendant The Guardian Life Insurance Company of America (Guardian) has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that plaintiffs' motion should be denied.

This case is one of many filed in state and federal courts across the nation by various plaintiff-insureds against insurers which are

alleged to have used fraudulent means to market and sell to consumers and/or to induce their insureds to continue the coverage of, certain "vanishing premium" life insurance policies.[1] The named plaintiffs herein allege that defendant induced them, along with thousands of others whom they purport to represent, to buy whole life insurance policies from defendant on the basis of representations—imparted to them by agents of defendant through misleading policy illustrations provided by defendant—that only a limited number of premiums would be required during the initial years of the policy and that after a certain period of time, the premiums would "vanish" as dividends and interest credited to the policies accumulated sufficiently to cover the cost of future annual premiums. They complain that contrary to the impression created by the representations inherent in defendant's illustrations, the premiums did not vanish but rather, because the actuarial assumptions underlying these policy illustrations (which defendant had failed to disclose) were not well grounded or realistic, continued to be due and payable beyond the so-called "vanish date." Plaintiffs allege that as a consequence, they and others have thus found themselves in the position of having to pay premiums in excess of that which they had originally anticipated, or to discontinue additional payments and lose cash value for which they have already paid. Based on their allegations, plaintiffs have asserted a variety of theories of recovery, including common law fraud, for which they seek what they characterize as "injunctive and equitable restitutionary relief to (1) stop the erosion of class members' insurance benefits; (2) restore lost insurance benefits; and (3) force Guardian to disgorge premium payments collected after the 'vanish date'."

Pursuant to Rule 23(a) and (b)(2) and (3), plaintiffs have moved for certification of a plaintiff class as to the fraud claims alleged in the amended complaint which class would consist of the following:

> Those persons who purchased whole life policies from Guardian between January 1, 1986 and December 31, 1994 who, according to Guardian's records and/or the records of its agents, requested a vanishing premium payment option or who purchased under a vanishing premium concept.

The requisites for class certification are as follows:

> To proceed as a class, plaintiffs must first establish the four requirements set forth in Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable [numerosity], (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class [adequacy]." Fed.R.Civ.P. 23(a). Then, the plaintiffs must show that the action is maintainable as a class action under one of Rule 23(b)'s subsections. *See generally Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996) (noting that plaintiffs have the burden of showing that certification is appropriate) .... To maintain a class action under Rule 23(b)(3), plaintiffs must show: (1) that "[c]ommon questions ... predominate over any questions affecting only individual members" ("predominance"); and (2) that "class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy" ("superiority"). *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 623–24 (5th Cir.1999) (internal quotations omitted) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615, 117 S.Ct. 2231, 2246, 138 L.Ed.2d 689 (1997)).

*Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 265 (5th Cir.2000); *see Mullen*, 186 F.3d at 623 ("A class may be certified under Rule 23(b)(3) only if it meets the four prerequisites found in Rule 23(a) and the two additional requirements found in Rule 23(b)(3)"). "These requirements [for Rule 23(b)(3) certification] ensure that certification is granted

---

1. Generally speaking, so called "[v]anishing premium policies are paid dividends which in some instances can be sufficient to cause the premium to 'offset' whereby dividend values are used to pay the premium. In such an instance, the cash premium 'vanishes' and is no longer due from the insured." *Phillips v. New England Mut. Life Ins. Co.*, 36 F.Supp.2d 345, 347 (S.D.Miss.1998).

only where the adjudication of common issues in a single action will achieve judicial economies and practical advantages without jeopardizing procedural fairness." *Rothwell v. Chubb Life Ins. Co. of Am.*, 191 F.R.D. 25, 29 (D.N.H.1998) (citing *Amchem*, 117 S.Ct. at 2249).[2]

Plaintiffs submit that this case, seeking redress for consumer fraud perpetrated by defendant, is not only appropriate, but *presumptively* appropriate for class treatment. They insist that each of the four requisites prescribed by Rule 23(a) is easily met and further urge that the predominance requirement of Rule 23(b)(3) is also satisfied based on their allegations relative to Guardian's alleged creation and implementation of a deceptive scheme for marketing its "vanishing premium" policies. Their allegations, they contend, place "[the focus of the litigation] ... on Guardian's upper management's acts, omissions, and misconduct to perpetrate its 'vanishing premium' scheme" rather than on the circumstances of individual class members. In this vein, plaintiffs assert that Guardian provided its agents with illustrations generated by Guardian, and/or more significantly, with computer software which allowed the agents to print their own illustrations, in order to demonstrate how and when a customer's premiums would "vanish." Plaintiffs insist that all of Guardian's illustrations and software incorporated the same underlying actuarial assumptions, which were undisclosed to customers and potential customers and which were unfounded in light of Guardian's true dividend experience and philosophy. Plaintiffs thus conclude that "[a]ll class members were victims of standardized misrepresentations and omissions when Guardian used its software to create the uniform illustrations. All class members suffered from Guardian's uniform deception caused by policy illustrations generated by the same computer software, with the same actuarial assumptions." [3]

---

**2.** Rule 23(b)(2) provides that an action may be maintained as a class if the requisites of 23(a) are met and in addition, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." While plaintiffs purport to seek certification under Rule 23(b)(2) as well as Rule 23(b)(3), it is plain that Rule 23(b)(2) cannot be satisfied here. Though plaintiffs couch their demand for relief in equitable terms, perhaps in order that they might make a colorable attempt for class certification under this subsection, it is manifest that the primary focus of their demands is on monetary relief. *See* Fed.R.Civ.P. 23 (advisory committee notes) (class certification under (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages"); *cf. Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 411 (5th Cir.1998) ("[M]onetary relief may be obtained in a(b)(2) class action so long as the predominant relief sought is injunctive or declaratory.").

**3.** In the memorandum accompanying their motion, plaintiffs state the following:

This action was commenced to remedy Guardian['s] ... fraudulent "vanishing premium" life insurance sales practices. Guardian, like many of its competitors ... based its computer-generated "vanishing premium" sales illustrations on actuarial assumptions that were intentionally manipulated by the company to portray more favorable "vanish dates." ... Guardian incorporated these inflated dividend assumptions into its illustration software and based its illustrations on dividends that were artificially "propped up" through a series of undisclosed funds and actuarial manipulations.

The actuarial methods and principles used for dividend calculations were uniform for all Guardian participating policies. Each year, acting on the recommendations of Guardian's actuarial and other management personnel, Guardian's Board of Directors met to discuss, modify, and ultimately approve on a company-wide basis, a dividend scale applicable to in-force policies and new sales illustrations. The dividend rates and other assumptions underlying Guardian's sales illustrations were centrally determined on a company-wide basis and uniformly applied for all vanishing premium illustrations. As a result, to the extent these assumptions were intentionally manipulated or were not supported by Guardian's actual current or expected experience, the vanish points represented to all class members were impacted in a common manner.

Guardian designed and supplied its agents with uniform policy illustrations and computer software to sell "vanishing premium" policies to new and existing policyholders. Guardian projected out-of-pocket premiums and accrued policy values over the policies' duration. Computerized policy illustrations were integral to Guardian's "vanishing premium" scheme.... Guardian [created] software that could be disseminated to its national sales force. Guardian's software was designed to produce "personalized" policy illustrations by inserting names, ages, and policy face amounts into "computer fields." ...

Guardian's computer software generated sales presentations that were uniform in for-

In the court's view, notwithstanding defendant's arguments to the contrary, it seems, and the court will at least assume for the sake of argument, that plaintiffs can establish the Rule 23(a) prerequisites. The court, however, in view of the evidence in the record, is convinced that while there obviously are some issues of law and fact common to the proposed class as to Guardian's acts and/or omissions, individual issues, particularly relating to the specific sales presentations to individual class members and individual class members' reliance, substantially predominate over those common issues and render class certification inappropriate.[4]

There have been some cases in which classes have been certified based on allegations that the defendant insurers engaged in a uniform course of deception in the marketing and sale of "vanishing premium" policies. Typically, though, these have been cases which either have not involved oral representations by agents, such as where the plaintiffs' allegations concerned misrepresentations in the policy itself, *see, Cope v. Metropolitan Life, Ins. Co.,* 82 Ohio St.3d 426, 433 & 433 n. 3, 696 N.E.2d 1001 (Ohio 1998) (plaintiff's claims were "not based on any oral or affirmative misrepresentation or any other actionable conduct occurring during preapplication sales negotiations ... [but, rather, on allegations that MetLife] intentionally omit[ted] the state-mandated written disclosure warnings...," and these claims were "to be decided strictly upon the standard written policy contracts, not upon any oral misrepresentations of MetLife or its agents."); or, more typically, they have involved the sale of a defendant's product by persons, either the insurer's own sales persons and/or independent agents, who have been uniformly trained as to the defendant's required sales presentation and/or who have been required by the defendant to use uniform sales materials in their sales presentations, *see In re The Prudential Ins. Co. of America,* 962 F.Supp. 450, 513–16 (D.N.J. 1997). In the latter case, the fact that there may have been oral misrepresentations to particular insureds in furtherance of the insurer's alleged common scheme of deception did not preclude a finding that the common issues relative to the insurer's conduct predominated over individual issues since the evidence showed that oral misrepresentations made by agents throughout the country were "virtually identical" because the agents were trained uniformly and were required to use uniform sales materials. *See Cohn v. Massachusetts Mut. Life Ins. Co.,* 189 F.R.D. 209, 216 (D.Conn.1999) (distinguishing *Prudential* and *Cope* ). As is clear from the record, this case is not of that genre.

Guardian did not employ a "sales force" or any salespeople, but rather sold its products through independent general agents throughout the country; and it did not train these

mat, design, and content. Consequently, the "vanishing premium" presentation made to all class members was identical and dependent on the same undisclosed actuarial assumptions. [As a result,] [a]ll class members were victims of standardized misrepresentations and omissions when Guardian used its software to create the uniform illustrations. All class members suffered from Guardian's uniform deception caused by policy illustrations generated by the same computer software, with the same actuarial assumptions.

4. In *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 552–53, 94 S.Ct. 756, 765–66, 38 L.Ed.2d 713 (1974), and *Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 353–54, 103 S.Ct. 2392, 2397–98, 76 L.Ed.2d 628 (1983), the Supreme Court held that "filing a Fed.R.Civ.P. 23 class action tolled limitations for potential class members pending the certification ruling." *Vaught v. Showa Denko K.K.,* 107 F.3d 1137, 1143–44 (5th Cir.1997). In addition to contending that plaintiffs have completely failed to establish any of the Rule 23(a) or (b) requisites for class certification, defendant herein has argued that pursuant to *American Pipe/Crown, Cork & Seal* and their progeny, since plaintiffs' claims against Guardian would be time-barred *but for* the tolling afforded their claims during the pendency of the class certification motion in *Clarke v. Guardian Life Insurance Co. of America,* No. 95–1259–REK (D.Mass.1997), then plaintiffs are precluded from seeking class certification and may now only proceed with their individual claims. *See Byrd v. Travenol Labs.,* 675 F.Supp. 342, 348 n. 5 (N.D.Miss.1987) ("[P]utative class members may not piggyback one class action onto another and thereby toll the statute of limitations indefinitely.").

Because the court concludes that plaintiffs have not established the requisites for class certification in any event, the court has found it unnecessary to address defendant's arguments on this point.

agents, or at least there is nothing in plaintiffs' motion or any of the submissions before the court to suggest that it did, and certainly did not train them, or otherwise require them to provide a scripted, or standardized sales pitch. Moreover, while Guardian did provide agents with illustrations and/or computer software which allowed the agents to generate their own illustrations, there is no allegation or evidence that Guardian required that agents use these illustrations in their policy presentations. Indeed, the record evidence discloses that some agents sometimes used illustrations and some did not. And because there was no Guardian-prescribed sales pitch, agents were free to provide their clients with whatever explanation or elaboration about the product and/or illustration which they may have deemed appropriate or relevant to their clients.

Despite this evidence, plaintiffs maintain that "[w]hat any one of Guardian's agents may or may not have done in selling Guardian's vanishing premium life insurance is of no moment on this motion," since "[t]his case concerns Guardian's Home Office conduct, and information withheld by Guardian from Keyes and the class." That obviously, though, is not the case. Despite this conclusory assertion by plaintiffs, and their repeated incantations regarding Guardian's alleged use of "uniform" illustrations, it is evident this is not one of those cases in which uniformity prevailed. Rather, there is substantial evidence that sales presentations differed from agent to agent, from client to client, and from transaction to transaction. For that reason, a plaintiff's case cannot succeed merely on proof of Guardian's acts and/or omissions, but rather, their success or failure will depend on a substantially more individualized inquiry as to the mix of information received by each class member, and how the information affected the class member's decision, i.e., whether there was reliance by that person.[5] In light of these considerations, this court cannot conclude that defendant's policies were sold in a sufficiently uniform manner so as to justify a finding that common issues predominate and to thereby permit this case to proceed as a class action. *See Simon v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 482 F.2d 880, 882 (5th Cir. 1973) ("If there is any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action."); Fed.R.Civ.P. 23 advisory committee notes (even where allegations of proposed class have common core, "if there was a material variation in the representations made or in the kinds or degree of reliance by the persons to whom they were addressed," class treatment is inappropriate).

While plaintiffs insist that a class should be certified given the nature of this case, none of the cases cited upon which plaintiffs rely persuades the court that this would be an appropriate course. Of the cases upon which plaintiffs primarily rely, most are materially distinguishable and none is persuasive. *In re Prudential* and *Cope* are distinguishable because the former actually did involve uniform illustrations and sales presentations, and the latter concerned only nondisclosures in the written policy document. Another of the decisions upon which plaintiffs principally relied, the Louisiana Supreme Court's decision in *Banks v. New York Life Insurance Co.,* 722 So.2d 990 (La. 1998), was vacated on rehearing by the court,

---

**5.** Citing *Prudential*, plaintiffs argue that reliance may be presumed because of Guardian's common course of deception, and the uniformity of that deception, so that issues of any particular individual's reliance are immaterial. *But see Cohn*, 189 F.R.D. at 216 (noting that "the overwhelming majority of states do not permit a presumption of reliance in common law fraud cases.") (citing *In re Ford Motor Co. Vehicle Paint Litigation*, 182 F.R.D. 214, 221–22 (E.D.La. 1998)). However, plaintiffs have cited no case in which reliance was presumed when individual plaintiffs did not necessarily receive the same mix of information. Many courts have held that reliance, even if there might be some situations in which it could be appropriately presumed, may not be presumed in circumstances such as these. *See, e.g., In re Jackson National Life Ins. Co. Premium Litigation*, 183 F.R.D. 217, 222 (W.D.Mich.1998) ("Where, as here, the information contained in the illustrations was shared with customers, if at all, in the context of varying oral presentations, presumption of reliance is inappropriate."); *Cohn*, 189 F.R.D. at 216 (distinguishing *Prudential* as case involving "essential uniform misrepresentations directed at all members of the class," and concluding that reliance could not be presumed in other cases).

which held that a fraud class could not properly be certified since individual reliance was at issue. *See Banks v. New York Life Ins. Co.*, 737 So.2d 1275 (La.1999). The court concluded that because the challenged misrepresentations were allegedly written in defendant's illustrations and based upon oral statements by individual insurance agents, the need for individualized adjudication of liability issues of reliance and causation militated against finding of predominance of common character and superiority of class action procedure. *Id.* at 1281.

In yet another case cited by plaintiffs, *In re New England Mutual Life Insurance Company Sales Practices Litigation*, 183 F.R.D. 33 (D.Mass.1998), the court did certify a plaintiff class in a vanishing premium case; but the class was certified pursuant to Rule 23(b)(1), and not under 23(b)(2) or (3), the two subsections of Rule 23(b) upon which plaintiffs have predicated their motion.[6] Indeed, Judge Keeton specifically deferred any decision of whether certification might also be appropriate under Rule 23(b)(3). *Id.* at 43.[7] Moreover, and more pertinently, the class certified in *In re New England* was significantly narrower than any of the proposed class definitions suggested by plaintiff.[8] *Id.* at 37.[9]

**6.** Rule 23(b)(1) permits class actions where Rule 23(a)'s requirements are met and, in addition, "the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudication with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair their ability to protect their interests.". Though plaintiffs argue in a surreply brief that Rule 23(b)(2)(A) certification would be proper here, the court does not agree. *See Kent v. SunAmerica Life Ins. Co.*, 190 F.R.D. 271, 280 ("[G]iven the individual-fact-specific nature of the plaintiffs' claims, I perceive little risk of 'inconsistent adjudications or incompatible standards of conduct in having those claims adjudicated separately'.").

**7.** While plaintiffs recited in their complaint that "the prosecution of separate actions would create a risk of inconsistent or varying adjudications with respect to individual members of the class," they did not move for certification under Rule 23(b)(1). That this is so is confirmed by a perusal of the table of contents accompanying their memorandum, which include at V.C.1. the heading "Certification is appropriate and warranted under Rule 23(b)(3)," and at V.C.2. the heading, "Certification is appropriate and warranted under Rule 23(b)(2)." There is no heading, or accompanying argument for, "Certification is appropriate and warranted under Rule 23(b)(1)." Accordingly, contrary to plaintiffs' contention otherwise, defendant was certainly not off the mark in its assertion to the court that certification was not sought under Rule 23(b)(1).

**8.** Judge Keeton specifically refused to certify the class as proposed by plaintiffs—a class substantially akin to that proposed by plaintiffs in the case at bar—since such a class "would make the proceeding one in which issues distinctive to individuals predominate over common issues," would be "unmanageable," and would not be superior to separate proceedings on individual claims. *Id.* at 37. He concluded, though, that by confining the class to those making claims based upon training provided by the defendant, the materials developed at the defendant's headquarters by or at the instance of high-level management, and the practices of the home office (high-level management), no need existed "to probe into what individual agents said to individual policyholders." *Id.* at 39. In other words, Judge Keeton undertook to define a class in such a way as to shift the focus away from the individual plaintiffs' actions and to the defendant insurer's marketing decisions and practices. This court is somewhat skeptical of the utility of a class so defined and of whether individual issues of reliance may actually be avoided by limiting the class definition in this manner; but those issues were not even addressed by Judge Keeton. In any event, a more limited class of the nature certified in *In re New England* would not work in this case, for although the plaintiffs do charge that defendant based its illustrations that it furnished to agents on false or invalid actuarial assumptions, they have not alleged that defendant concealed the true facts from the agents. On the contrary, they take the position that Guardian and its agents knew the critical, material facts which were not shared with customers/insureds.

**9.** Plaintiffs have also heavily relied on *Security Life of Denver Ins. Co. v. Ferguson*, No. 05–98–01738–CV, 1999 WL 339017 (Tex.App. May 28, 1999). *Ferguson* represents one of a handful of "vanishing premium" cases that has been certified as a class for trial, and not merely as a settlement class. There, the court found that the lower court had not abused its discretion in certifying the class, observing as follows:

> Appellees' complaints center around Security Life's alleged common course of conduct in designing and marketing the JSWLE policy and not on any specific representations made by a particular independent agent. Questions

In contrast to the cases cited by plaintiffs, numerous courts have refused to certify classes in cases just such as this, and for the very reason that persuades this court that certification is not appropriate, namely, the lack of predominance of common issues over individual ones. *See Kent v. SunAm-erica Life Ins. Co.,* 190 F.R.D. 271, 278–80 (D.Mass.2000) (denying class certification based on, *inter alia,* lack of predominance, observing that "showing of uniformity of format (of computer-generated illustrations) falls far short of showing that sets of illustrations made available to one plaintiff were in content materially like those given to another potential class member;" moreover, "the detailed circumstances of each policyholder's story (as to alleged oral representations) are critical to that policyholder's claim"); [10] *Varacallo v. Massachusetts Mut. Life Ins. Co.,* No. ESX–L–3403–97 (N.J.Sup. Ct. Sept. 24, 1999) (plaintiffs alleged that defendant's written illustrations that it distributed to agents were false and misleading because defendant knew, but did not disclose to customers, that it would lower dividend rates; because "each plaintiff may have had a different interaction with the defendant's agents and brokers and the ability to establish reliance on a common law

fraud ... would vary from plaintiff to plaintiff," there was a need for individualized fact development which would require the court to conduct mini-trials for each plaintiff, and individual issues predominated over common issues, making a class action "totally unmanageable"); *Cohn v. Massachusetts Mut. Life Ins. Co.,* 189 F.R.D. 209, 212, 215, 216 (D.Conn.1999) (plaintiffs alleged they were induced to buy policies based on misleading sales presentations and marketing materials (primarily illustrations) presented by agents for defendant which failed to disclose material facts concerning the product; although plaintiffs alleged that illustrations distributed by defendant to its agents or printed by the agents using defendant's software, were identical in all material respects, and further alleged that sales presentations in each transaction were uniformly misleading due to defendant's centralized sales training, court concluded that because evidence showed that agents' sales presentations varied from transaction to transaction, and that the illustrations were not always identical and were not used consistently by agents in their sales presentations, then "the need for individualized fact-finding on ... [the] essential issues [of whether and which illustrations were given to class members, and of

involving whether the information and materials Security Life provided agents to sell the policies accurately reflected the inherent risk of the product and the true nature of EIC's will be critical inquiries. Additional common issues include whether Security Life's conduct was intentional or negligent and whether Security Life breached the terms of the JSWLE policy. These issues, when answered as to appellees, will be answered as to all class members and may be dispositive of the entire case. *See id. [Sun Coast Resources, Inc. v. Cooper,* 967 S.W.2d 525] at 533–34.

It appears Security Life's knowledge and conduct in designing and marketing the JSWLE policy, as opposed to the conduct of any individual agent, will be the focus of most of the efforts of the trial court and litigants. *See Health and Tennis Corp. of America v. Jackson,* 928 S.W.2d 583, 590 (Tex.App.1996). Individual questions involving reliance, statute of limitations, damages and the specific policy provisions referenced by Security Life are not likely to overshadow these pivotal issues. *Id.* at \*6. If the true focus of *Ferguson* was on the insurer's conduct because there was no material variation in the presentation of materials and information to insureds, then the class certifica-

tion in *Ferguson* would be consistent with the rationale of *Prudential.* To the extent that the court in *Ferguson* may have considered allegations of a common scheme sufficient in and of itself to warrant class certification, irrespective of individual variations, this court would not agree that certification should have been ordered.

10. Guardian relies on the fact that Judge Keeton denied certification of a plaintiff class in the vanishing premium case of *Clarke v. Guardian Life Insurance Co. of America,* No. 95–1259–REK (D.Mass.1997), not only as the basis of its *American Pipe/Crown Cork* argument, but also simply on the basis that the reasoning behind his ruling was sound and should be followed. To the latter argument, plaintiffs responded, *inter alia,* that Judge Keeton had decided *Clarke* before the Supreme Court's decisions in *Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach,* 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998), and *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997), and might well have ruled differently in *Clarke* had they post-dated these two Supreme Court decisions. *Kent* belies plaintiffs' argument on this point.

the nature of oral representations made to class members at the point of sale]" " 'militate[d] against a finding that ... common questions predominate'," as did the need for determining whether there was justifiable reliance in any given case, an inquiry which "in any given case would require extensive individualized adjudication"); *Parkhill v. Minnesota Mut. Life Ins. Co.*, 188 F.R.D. 332, 342 (D.Minn.1999) (plaintiffs alleged, *inter alia*, that defendant had failed to disclose underlying assumptions concerning dividend scales and interest crediting rates upon which policy illustrations were based; court found that plaintiffs satisfied four requisites of Rule 23(a), but failed to establish predominance element of Rule 23(b)(3), for the evidence showed that while defendant prepared sales literature, defendant did not require a uniform sales presentation by its agents and certification thus would require individualized inquiry into "the content of each sales presentation, the expectations and questions asked by each policyholder, and the reliance placed by the policyholder on the representations made by defendant's agents"); *M.C. Sullivan Investment Co. v. Jackson Nat'l Fire Life Ins. Co.*, No. 97–548796CP (Mich.Cir.Ct. Aug. 13, 1999) (though plaintiffs alleged that policies were marketed and sold pursuant to defendant's uniform vanishing premium marketing plan, court found that questions of fact common to members of proposed class did not predominate over individual issues; because evidence indicated that "different brochures, illustrations, and oral presentations were made by the Defendant, through private brokers, to individuals who had different needs and expectations," court reasoned that if class were certified, trier of fact would have to hear individual testimony from most or all class members to determine fact issues "such as whether a Class member saw illustrations, whether the various Class members saw the same illustrations, and whether the Class members relied on those illustrations," and would have to hear evidence from the class members "as to the nature of the oral presentation made by the broker in light of their expectations and needs"); *Velasquez v. Crown Life Ins. Co.*, No. M–97–064, slip op. at 2–4,

6, 16 (MDL–1096) (S.D.Tex. Aug. 10, 1999) (plaintiff alleged, *inter alia*, that defendants' illustrations, as defendants knew yet failed to disclose to their customers, were based on assumptions that had no reasonable basis in reality, and that defendants knowingly prepared false illustrations to be disseminated to brokers for use in selling policies; court found that while plaintiff likely could establish threshold requirements of Rule 23(a), he did not meet the requisites for Rule 23(b)(3) certification because individualized issues predominated in that if certified as a class, court "would have to determine what particular representations were made, whether and to what extent that class member relied upon those representations, whether that reliance was reasonable, whether the representations were based in whole or part on any common assumption underlying Crown Life's illustrations, and if so, whether and to what extent Crown Life's illustrations were relied upon by the class member"); *Banks v. New York Life Ins. Co.*, 737 So.2d 1275 (La.1999) (court noted first that where underlying claims are based on fraud, reliance of each aggrieved person as to each transaction must be proven, and that "[a] fraud class cannot be certified when individual reliance will be an issue;" it concluded that where misrepresentations were allegedly written in defendant's illustrations and based upon oral statements by individual insurance agents, need for individualized adjudication of liability issues of reliance and causation militated against finding of predominance of common character and superiority of class action procedure); *Force v. ITT Hartford Life & Annuity Ins. Co.*, 192 F.R.D. 592, 606–07 (D.Minn.1999) (predominance requirement not satisfied because "oral representations of each individual sales agent—as well as each Plaintiff's reliance thereon—will necessarily vary from Plaintiff to Plaintiff, from sales agent to sales agent, and from incident to incident."); *Rothwell v. Chubb Life Ins. Co. of America*, 191 F.R.D. 25, 31 (D.N.H.1998) (denying class certification in light of necessity of individualized determinations on reliance issues, stating, *inter alia*, that "the policy illustration was not a stand-alone document, but rather was only one piece of the entire mix of informa-

tion made available to each prospective policyholder"); *Russo v. Massachusetts Mutual Life Ins. Co.*, 178 Misc.2d 772, 680 N.Y.S.2d 916 (N.Y.Sup.Ct.1998) ("Countless combinations and permutations of financial and personal factors may have induced each of the individual sales, whether or not an illustration was mentioned or displayed by the agent, or 'browsed' by the insured."); *In re Jackson Nat'l Life Ins. Co. Premium Litig.*, 183 F.R.D. 217, 221 (W.D.Mich.1998) (communication by defendant with consumers was not direct but through independent brokers who were not subject to and did not follow uniform policies regarding distribution of policy illustrations which plaintiffs alleged were premised upon unsupported and unsustainable interest rates; "determination of whether and which illustrations were given to class members, and of the nature of oral representations made to them at the point of sale, elements of obvious and undeniable importance to all of plaintiffs' claims, [were] matters requiring individualized fact development," and militated against finding that common questions predominated).

Just as these many courts have declined class certification, so, too, will this court, for as the court in *Cohn, supra,* observed,

[t]hough there are issues common to the members of the proposed class, including in particular the actions and state of mind of [defendant] in pursuing the vanishing premium marketing strategy, these common questions are overshadowed by individualized issues such as the nature of the oral representations or disclosures made by the agent or broker at the point of sale, the nature of any questions asked by the consumer, the content of any written illustrations or disclosures given to the consumer, the degree of care exercised by the consumer in reviewing any written illustrations and the policy instrument, the portions of the offer that were attractive to the consumer, the degree of the customer's financial sophistication and his or her understanding of the product. These individualized issues, which are essential to the determination of the claims of each class member, predominate over questions common to the class.

*Cohn*, 189 F.R.D. at 218.[11]

For these reasons, the court concludes that plaintiffs' motion for class certification should be denied. Accordingly, it is ordered that plaintiffs' motion is denied.

---

**11.** The court observes, further, that the fact of the predominance of individual issues over the common issues also belies a finding that "class resolution [is] superior to other available methods for the fair and efficient adjudication of the controversy," the second requisite for Rule 23(b) certification. *See Castano v. American Tobacco Co.*, 84 F.3d 734, 745 n. 19 (5th Cir.1996) ("The greater the number of individual issues, the less likely superiority can be established."); *Cohn*, 189 F.R.D. at 218 ("In light of the individualized proof that would be necessary to properly adjudicate the claim of each of the thousands of members of the proposed class, a class action trial of all issues would not be feasible."); *M.C. Sullivan*, slip op. at 8 ("[B]ased on the large size of the Class and the individual testimony required, the maintenance of a national class action would not be the superior method of adjudication in promoting the convenient administration of justice."); *Force*, 192 F.R.D. at 606 ("Because of the need to show reliance on an individualized basis, class-wide adjudication of the Plaintiffs' non-statutory claims would be at best unwieldy, and potentially impossible.").